## In re LYMAN.

(Supreme Court, Appellate Division, Second Department. April 18, 1899.)

INTOXICATING LIQUORS—PLACE OF SALE.

    A liquor tax certificate, authorizing the sale of liquor on a baseball ground, described the bar as located in a certain place. At the place mentioned there was a bar, and, when games were played on the grounds, kegs of beer were placed at other locations, and waiters passed among the spectators, taking their orders for beer, which they filled by getting it from the different kegs; collecting the price as they delivered it to the customers, and giving tickets for the beer to the men in charge of the kegs, for which they afterwards had to settle. *Held*, that in view of Liquor Tax Law, § 11, subd. 1 (Laws 1896, c. 112, as amended in 1897), providing that a tax shall be assessed on the business of trafficking in liquors to be drunk on the premises where sold, and section 31, authorizing hotel keepers to serve their guests with liquor in connection with their meals in their rooms, the sales on the grounds were not within section 11, subd. 6, providing that, if there be more than one bar or place on any premises in which the traffic in liquors is carried on, an additional certificate shall be obtained for each additional place.

Appeal from special term, Kings county.

An application by Henry H. Lyman, as state commissioner of excise, for an order revoking liquor tax certificate No. 10,320, issued to the Malcom Brewing Company, was denied, and the commissioner appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

S. B. Mead, for appellant.
J. F. Bullwinkel, for respondent.

CULLEN, J.  The respondent, the Malcom Brewing Company, had a liquor tax certificate authorizing the sale of liquor on the Washington Park Baseball Grounds, in the borough of Brooklyn.  In the application for the license the location of the bar was stated to be on the north side of Third street, 350 feet east of Third avenue.  There was a bar on the premises at the location named, but, when games were being played on the grounds, kegs of beer were placed at other locations.  Waiters would take the orders of spectators on the various stands through the grounds, and bring these orders to men in charge of the kegs, who would furnish them glasses of beer, to be delivered to the customers.  The waiters, on receiving the beer, would give checks or tickets for the beer taken, for which they were held responsible, and would collect money for their sales from the customers.  The petitioner claims that this mode of carrying on the sale of liquor was a violation of the liquor tax law, and for such violation he seeks, under the provisions of section 28 of the statute (Laws 1896, c. 112), to revoke the respondent's license.

It is very doubtful whether the Malcom Brewing Company, on the record before us, was responsible for the sale of liquor which is claimed to have been illegal.  The business was carried on by one Harry M. Stevens, to whom the company sold beer, and gave the use of the certificate.  The sales were made entirely by Stevens or his agents, and the profits of the business, as well as the title to the liquor sold, was in him.  We do not see that any relation of agent or servant existed between Stevens and the company.  Having permitted the use of the certificate by Stevens for the sale of liquor at the bar or place specified in the certificate, it may be that for any infraction of the law there committed, or committed in connection with the business there carried on by Stevens, the company would be responsible.  But, if the sale of liquor in the field was so disconnected with the business carried on in the barroom as to be beyond the permit of the license, it is questionable whether it would not be equally beyond the implied authority given by the company to Stevens, and solely the illegal act of Stevens himself.  However this may be, we are of opinion that no violation of the law was proved, nor any false statement in the application for the certificate shown.  The bar was located correctly in the petition, and no other bar or place for the sale of liquor, in the proper sense of those terms, was maintained on the grounds.  By subdivision 6, § 11, of the liquor tax law, as amended in 1897, it is provided:

"If there be more than one bar, room or place on the premises, car, steamboat, vessel, boat or barge, at which the traffic in liquors is carried on under any subdivision of this section, a like additional tax is assessed for each such additional bar, room or place."

The terms of this provision are very broad and sweeping.  Still, they must be construed reasonably.  By section 31 of the act, the keeper of an hotel may sell liquor to his guests, with their meals or in their rooms, except between the hours of 1 o'clock and 5 o'clock in the morning, but not in the bar room or other similar room of such hotel.  It will hardly be claimed that a certificate must be taken out for the dining room, or the rooms of the guests who are there served

with liquor; nor can it be argued that the provision of law quoted gives hotels a special exemption from paying more than a single license fee. The only object of the provision is to take hotels out of the prohibitory clauses of the section which forbid the selling of liquor on Sundays, and days of general or special election, and the like. If it is construed as an affirmative grant of permission for an hotel keeper to sell liquor to his guests, then it follows that he can at no time sell liquor to a guest in the bar room, though that place is open to the rest of the world for resort. There is also to be considered the case of restaurants (not hotels), which, when of any pretension or character, have their dining rooms or eating rooms separate from the bar rooms. It is certainly customary to serve wines or liquors in the dining room with meals. There are many music or other gardens where liquor is sold. It would be unreasonable to hold that in no such place could a patron be served with beer, wine, or liquor, except in the bar room, unless additional certificates are taken out,—for what? For each table? We concede that, under the law, if a second bar room, or place distinctively for the sale of liquor, is maintained, an additional tax certificate must be taken out, to cover it. But, where no other bar or place of the character is maintained, we think refreshments may be served by waiters to persons not in the bar room, without a violation of the law. Such practice seems to be contemplated by the statute itself. By subdivision 1, § 11, it is directed that "a tax shall be assessed upon the business of trafficking in liquors to be drunk upon the premises where sold, or which are so drunk, whether in a hotel, restaurants, saloon, * * * or in any out-building, yard or garden appertaining thereto or connected therewith"; thus recognizing that liquor may be sold, or at least served, in connecting gardens.

It is plain that the delivery of beer to the waiters by the man in charge of the keg did not constitute the sale. The system adopted, of requiring tickets or vouchers from the waiters, was simply a mode of insuring a proper accounting for the money received by them. The sales in this case occurred when the waiters delivered the beer to the spectators on the grounds, and received payment therefor. That they got the beer from the keg in the field is of no more consequence than if they had taken it from the cellar. The sales so made by the waiters should fairly be considered as mere incidents to the main business carried on in the bar room, and not as constituting the maintenance of a separate and independent place for the sale of liquor.

The order appealed from should be affirmed, with $10 costs and disbursements. All concur.