(77 Misc. Rep. 613.)

### PEOPLE v. FAPPIANO.

### SAME v. DORE.

(Court of Special Sessions, New York County.   September, 1912.)

1. INTOXICATING LIQUORS (§ 150*)—ILLEGAL SALE—LICENSE—"SALE WITHOUT A LICENSE."

   Where no separate bar is maintained in a room connected with the barroom in premises licensed for sale of liquor, serving liquor in said room is not a sale without a license.

   [Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 164, 165;  Dec. Dig. § 150.*

   For other definitions, see Words and Phrases, vol. 7, pp. 6291–6306; vol. 8, p. 7793.]

2. INTOXICATING LIQUORS (§ 150*)—SALES WITHOUT LICENSE—EVIDENCE.

   Where, in an application for a liquor tax certificate, the location of the bar is stated to be in the front room on the ground floor, and liquors were served in rooms above the same, supplied by waiters from the bar, a sale of liquor without a license was not established.

   [Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 164, 165;  Dec. Dig. § .150.*]

Charles Fappiano and Charles A. Dore were separately indicted for violating the Liquor Tax Law.  By stipulation the cases were to be considered as if tried together.  Judgment for defendants.

Charles S. Whitman, Dist. Atty., and Floyd H. Wilmot, Deputy Dist. Atty., both of New York City, for the People.

Thomas J. Sullivan, for defendants.

COLLINS, J.   Both defendants were charged separately with the crime of violating the Liquor Tax Law (Consol. Laws 1909, c. 34), in that on the 5th day of May, 1912, at No. 8 Doyers street, in the county of New York, they engaged in the traffic of liquors without having paid the excise tax as required by subdivision 1 of section 8 of the Liquor Tax Law, or in other words, that they engaged in the sale of liquors without a license.  On trial a stipulation was entered into as to both cases to the effect that they were to be considered as if tried together.  A motion was made at the close to acquit defendants, on which decision was reserved.

Subdivision 1 of section 8 of the Liquor Tax Law, in so far as it applies to the case at bar, provides as follows:

"Upon the business of trafficking in liquors to be drunk upon the premises where sold, or which are so drunk, whether in a hotel, restaurant, saloon, store, shop, booth or other place, or in any outbuilding, yard or garden appertaining thereto or connected therewith, there is assessed an excise tax to be paid by every person engaged in such traffic, and for each such place where such traffic is carried on by such person if the same be in a city or borough having by the last state census a population of fifteen hundred thousand or more, the sum of twelve hundred dollars."

Subdivision 8 of the same section provides in part:

"If there be more than one bar, room or place on the premises, car, steamboat, vessel, boat or barge, at which the traffic in liquors is carried on

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

under any subdivision of this section, a like additional tax is assessed for each such additional bar, room or place."

A license had been issued to one Peter J. Breen for a saloon at No. 3 Doyer street, which license was in operation at the time of the violation alleged. In the application applying for such license the specific location of the bar on the premises or place where the liquors were to be sold was stated to be on the ground floor, front room thereof.

Two officers entered the premises in question and proceeded to a floor immediately over the saloon, where there were two rooms in which the defendants were. The officers sat at a table and ordered beer on two occasions, once of the defendant Fappiano, and once of the defendant Dore. Each defendant left the room and returned shortly with the beer. The defense was that the liquors were served from the barroom below, and that the room or rooms in question were used as incidents to such bar, and were a part of the premises. Entrance to the bar from the floor where the drinks were served was by stairway leading from the hallway immediately adjoining the rooms to a hallway in the rear of the barroom below, thence through a door from such hall. The officers stated they did not know where the drink was obtained; that upon giving the order in each instance the defendant left the room and returned shortly thereafter with the beer.

It was shown on behalf of the defendants that both were waiters employed by the proprietor of the saloon, and had obtained the liquor furnished from the saloon. The question, therefore, is whether or not the rooms in which the liquor was served may be considered a part of the licensed premises within the provisions of the Liquor Tax Law. If a part of the premises, it follows that the defendants should be acquitted.

The provisions of the Liquor Tax Law above referred to have been construed in a case which seems to be controlling of the one at bar. Matter of Lyman, 40 App. Div. 46, 57 N. Y. Supp. 634. A license had been granted to the respondent for the sale of liquor in Washington park, in the borough of Brooklyn. In the application for the license the location of the bar was stated to be at one corner of that park, while liquors were served throughout the inclosure by virtue of said license, and the question was whether or not the sales were legal under the license. Other questions were considered in the case not important here. The court said, construing the provision of the Liquor Tax Law relating to more than one bar or room or place on the premises:

"The terms of this provision are very broad and sweeping; still they must be considered reasonably. By section 31 of the act, as amended [Laws 1909, c. 281], the keeper of a hotel may sell liquor to his guests with their meals or in their rooms, except between the hours of 1 o'clock and 5 o'clock in the morning, but not in the barroom or other similar room of such hotel. It will hardly be claimed that a certificate must be taken out for the dining room, or the rooms of the guests who are there served with liquor; nor can it be argued that the provision of law quoted above gives hotels a special exemption from paying more than a single license fee. The only object of the provision is to take hotels out of the prohibitory clauses of the section which forbid the selling of liquor on Sundays and days of general or special election and the like. If it is construed as an affirmative grant of per-

mission for a hotel keeper to sell liquor to his guests, then it follows that he can at no time sell liquor to a guest in the barroom, though that place is open to the rest· of the world, for resort. There is also to be considered the case of restaurants (not hotels), which, when of any pretension or char-.acter, have their dining rooms or eating rooms separate from the barrooms. It is certainly customary to serve wines or liquors in the dining room with meals. There are many music or other gardens where liquor is sold. It would be unreasonable to hold that in no such place could a patron be ·served with beer, wine, or liquor except in the barroom, unless additional certificates are taken out, for what—for each table? We concede that, under the law, if a second barroom, or place distinctively for the sale of liquor, is maintained, an additional tax certificate must be taken out to cover it. But where no other bar or place of the character is maintained, we think refreshments may be served by waiters to persons not in the barroom, with- ·out a violation of the law. Such practice seems to be contemplated by the statute itself. By subdivision 1, § 8, it is directéd that a tax shall be assessed upon the business of trafficking in liquors being drunk upon the premises where sold, or which are so drunk, whether in a hotel, restaurant, saloon, or in an outbuilding, yard, or garden appertaining thereto or connected therewith, thus recognizing that liquor may be sold, or at least served, in connecting gardens. * * * The sales so made by the waiters should fairly be considered as mere incidents to the main business carried on in the barroom, and not as constituting the maintenance of a separate and independent place for the sale of liquor."

There are in the city of New York numerous places where sitting rooms are maintained in connection with a saloon, and it would be folly to hold that liquors served therein, supplied at the bar to waiters, would cause the·proprietor or the waiter so serving to be guilty of the offense of selling without a license.

There was some evidence in the case that a chartered club was in possession of the rooms where the liquor was served to the officers, but ,it was shown that the club in question had no charge or control ·of the rooms; that its members met there only once or twice a month at the courtesy or consent of the proprietor of the saloon, and in a way not calculated to change the general character of the place or rooms as sitting rooms for the customers of the saloon. It was contended, however, that because there was not a direct connection with the saloon by an opening in the floor leading to the bar below, or by a stairway leading directly into the barroom, therefore the rooms ·could not be considered as a part of the licensed premises. The manner of obtaining entrance to the saloon from the rooms referred to was by a hall stairway, as above stated. If this would be sufficient to establish that the rooms were not connected with the premises, it would follow, in a large number of places in the city of New York, where bowling alleys are maintained in the basement, with a licensed saloon on the first floor, to which alleys access is obtained from a hallway adjoining the saloon to a hallway adjoining the bowling alleys, and in which alleys drinks are served to the patrons from the saloon, that they are all operated in violation of the law unless a sep-.arate liquor tax certificate is obtained. This would seem to be straining the application of the Liquor Tax Law to an extent not intended by the Legislature. We are unwilling to agree with the hairsplitting distinction that if the proprietor of the saloon in question had, for his own convenience, caused a hole to be cut in the floor of the room

above his saloon, and used an elevator or dumb-waiter to hoist the liquors up, he would not have been guilty of a violation of the Liquor Tax Law, and because he did not avail himself of such a convenience that guilt is established.

The Legislature has provided drastic punishment for selling liquors without a license, and has fixed the minimum penalty of $200 fine and 30 days in prison, together with a minimum of 40 days' additional imprisonment in the event of the fine not being paid. It is clear that the intention was to inflict such punishment upon persons who sold liquor without any license whatever. It was not intended to be applied to cases where customers were supplied in rooms adjoining the saloon through the medium of waiters.

The case cited above was affirmed by the Court of Appeals. Matter of Lyman, 160 N. Y. 96, 54 N. E. 577. On page 101 of 160 N. Y. and page 579 of 54 N. E., the court says:

"It fairly includes the right of the holder to distribute liquors in the glass by waiters to the patrons of the public place where the bar is located. * * * In such cases it would seem to be reasonable to assume that a person authorized to sell liquor to the public frequenting the place should have the right to reach the public from his bar on the grounds through waiters employed to distribute to the patrons of the place what he was authorized to sell and deliver. The license covers, not only the right to sell over a bar, but whatever else is fairly included in or incidental to the business authorized."

In Matter of Lyman (Texter Certificate), 59 App. Div. 217, 69 N. Y. Supp. 309, the court, in a case where several bars were maintained at one time in a public park, and it was subsequently sought to do all the business of the place on one certificate, in determining against such contention, reiterating its ruling in Matter of Lyman above cited, says on page 219 of 59 App. Div. and page 311 of 69 N. Y. Supp.:

"In that case we simply decided that beer, wine, or liquor might be served outside of the barroom, where but a single barroom or place of that character was maintained, inasmuch as such a practice seemed to be contemplated by the statute itself."

[1, 2] It seems to be the law of this state, therefore, that where liquor is served in rooms other than the barrooms, and it can be shown that such rooms are connected and incidental to the barroom, and that no separate bar is maintained therein, such an act does not constitute the offense of selling liquors without a license. In this case there was no separate bar maintained in the rooms in question, and the evidence affirmatively showed that the liquors were supplied from the bar through the medium of waiters, and that the said rooms were connected with and incidental to the said licensed premises.

It would follow, therefore, that the offense of selling liquors without a license is not established, and both the defendants accordingly should be acquitted.

Motion granted.

ZELLER and O'KEEFE, JJ., concur.