(28 Misc. Rep. 622.)

In re KINZEL.

(Supreme Court, Special Term, Monroe County.    August, 1899.)

1. INTOXICATING LIQUORS—SALE BY HOTEL KEEPER.
    Liquor Tax Law, §§ 30, 31, permitting hotel keepers to serve liquor to their guests at meals, and defining a guest as one who, during regular meal hours, and in good faith, goes to the hotel for a meal, and actually

orders and receives such meal, is violated where only liquor is ordered, and no food is served except a sandwich, which is not eaten.

2. SAME—CONSENT OF MASTER TO SALE BY SERVANT.
Where it appears that liquor was served in the dining room of defendant's hotel, in defendant's presence, and no meal was served therewith other than a sandwich, which was not ordered, and in some cases served without even this, it must be assumed that defendant consented that liquor be served other than with meals.

In the matter of the application of George Kinzel for an order revoking a liquor tax certificate granted to Michael Malone. Granted.

H. C. Spurr, for petitioner.
Merton E. Lewis, for respondent.

DAVY, J. This is a motion to revoke and cancel liquor tax certificate No. 13,865, issued to Michael Malone, the keeper of a hotel at No. 93 Front street, in the city of Rochester, on the ground that said Malone, on Sunday, the 14th day of May, 1899, permitted his servants to sell liquor to a number of persons who were not guests of the hotel. The two principal questions in this case are: First. Did the servants of said Malone sell liquor to persons on the Sabbath, who were not guests of the hotel? Second. Were such sales made without his knowledge and consent? It appears from the evidence that two of the petitioner's witnesses entered the dining room of the respondent's hotel on Sunday, the 14th day of May last. One of them called for a glass of beer, and the other called for a glass of ale. After these parties had finished drinking the ale and beer, a couple of cheese sandwiches were brought from an adjoining room, and placed on the table. These sandwiches were not ordered or paid for by either party. It also appears from the evidence that while these parties were in the dining room there were two men at another table, with their hats on, drinking beer, without having any kind of food before them, and there was no food on any of the tables in the dining room. It also appears that another man came into the dining room, and called for a glass of beer, and he was informed by one of the servants that it would be necessary for him to have something to eat, and they brought him a cheese sandwich with his beer. It also appears that during this time the respondent, his wife, and son were in the dining room, and must have seen all that took place. The facts testified to by the petitioner's witnesses are not disputed by the respondent, or any of his witnesses. His testimony was to the effect that he had instructed his servants not to violate the law, and to tell persons who came to the hotel on Sunday, and asked for liquors, that they must have something to eat with their drinks. The petitioner claims that these parties to whom liquor was sold were not guests of the hotel, and this mode of selling liquor was a violation of the liquor tax law, and for such violation he seeks, under the provisions of section 31 of said act, to revoke the respondent's license. That section provides that the holder of a liquor tax certificate under subdivision 1 of said act, who is the keeper of a hotel, may sell liquor to the guests of such hotel, except to such persons as are described in clauses 1, 2, 3, 4, 5, and 6 of section 30 of such act, with their meals, or in their rooms

therein, except between the hours of 1 o'clock and 5 o'clock in the morning, but not in the barroom or other similar room in such hotel; and the term "hotel," as used in this act, shall mean a building regularly used and kept open as such for the feeding and lodging of guests, where all who conduct themselves properly, and are able and ready to pay for their entertainment, are received, if there be accommodation for them, and, without any stipulated engagement as to the duration of their stay, or as to the rate of compensation, are, while there, supplied at a reasonable charge with their meals, lodgings, refreshments, and such other service and attention as are necessarily incident to the use of the place as a temporary home, and in which the only other dwellers shall be the family and servants of the hotel keeper, and which shall conform to the requirements of the statute. Section 31 provides that a guest of a hotel, within the meaning of that section, is: First, a person who in good faith occupies a room in a hotel as a temporary home, and pays the regular customary charges for such occupancy, but who does not occupy such room for the purpose of having liquor served therein; second, a person who, during the hours when meals are regularly served therein, resorts to a hotel for the purpose of obtaining, and actually orders and obtains at such time, in good faith, a meal therein. The requirements of this provision of the statute are very broad and sweeping, and are not in the least ambiguous. The hotel keeper's license gives him certain privileges on the Sabbath, which must be exercised in conformity to the law. It will be seen from the language of the act that persons who resort to an inn on Sunday for the purpose of procuring and drinking liquor are not guests, within the meaning of the statute, and the fact that the hotel keeper or his servants furnish sandwiches with the liquor does not make such persons guests. To put a sandwich beside a glass of beer when a sandwich is not ordered, and to take it away again without having received any pay therefor, is not serving a meal, in good faith, with the drink. If a person, on the Sabbath, goes to a hotel, and calls for liquor, and the proprietor or his servant informs him that he cannot be served with liquor unless they furnish him a meal, and a sandwich is brought, and placed before him, and they call it a meal, it is hardly necessary to say that this is not serving a meal, in good faith, with the drink, as required by section 31 of said act. Such a meal does not make him a "guest," in the common acceptation of the word. No such device or subterfuge can defeat the policy of the law. This mode of trafficking in liquor by hotel keepers on the Sabbath is contrary to the express provision of the statute. The proprietors of hotels, therefore, who permit liquors to be sold in the manner indicated, run the risk of having their liquor tax license revoked. A guest, within the meaning of the statute, is a person who in good faith occupies a room in a hotel as a temporary home, and pays the regular and customary charges for such occupancy, but who does not occupy such room for the purpose of having liquor served therein; or, second, a person who, during the hours when meals are regularly served therein, resorts to a hotel for the purpose of obtaining, and actually orders and obtains at such time, in good faith, a meal therein. If a person oc-

cupies a room in a hotel in good faith for rest or lodging, or actually orders and obtains a meal, he would be a guest, and to such person the hotel keeper may sell intoxicating liquor under his license. But one who takes a room for a brief period, for the sole purpose of procuring and drinking liquor, is not a guest, within the meaning of the statute; and, if the proprietor knowingly permits him to occupy and use the room for such a purpose, he violates the law. One who goes to a hotel on the Sabbath, and orders a meal, not in good faith, not because he is hungry, or wants anything to eat, but for the sole purpose of procuring and drinking intoxicating liquor to gratify a craving appetite, is not a guest, within the meaning of the statute, because he does not order the meal in good faith; and, if the proprietor of the hotel knows that the sole and only object in ordering the meal is to obtain intoxicating liquor, then he has no right to furnish it. If a traveler, who is tired and hungry, should stop at a hotel on the Sabbath, and at the usual hour for dinner should go into the dining room, and the only food placed before him was a cheese sandwich, could it be said that the sandwich constituted an ordinary meal? Assume that the guest refused to pay for the meal, and the landlord sued him; would any court hold that the sandwich was a meal? I think not. When a person goes to a hotel that is conducted on the American plan, and orders a meal, he is usually supplied with a variety of food,—as bread, butter, meat, vegetables, and tea or coffee.

The learned counsel for the respondent contends that his client should not be held responsible for the wrongful acts of his servants, especially when he had given them instructions not to sell liquor on Sunday to any person who came to the hotel, unless they furnished meals with the liquor. The intent of the act is to punish an individual only for an actual and intentional violation of its provisions. The act, however, need not be personally committed by the person charged, but, if authorized by him, or done with his knowledge or assent, he is liable. It is a rule of law well settled that the principal is held liable to the public or third persons in a civil action for the frauds, deceits, and misrepresentations of his agent committed in the course of the agent's employment, although the principal did not authorize or participate in the transaction. Story, Ag. § 452. There seems to be no escape from the conclusion that the respondent knew that his servants were violating the statute. The respondent was in the room at the time the witnesses ordered and drank the beer, and also while others were drinking beer, who were not supplied even with sandwiches. It must be assumed, therefore, as this was the usual and customary way of transacting the business in the hotel, that his servants were acting under his instructions. The facts and circumstances testified to by the petitioner's witnesses are not denied by the respondent or any of his witnesses, and they cannot be overcome by a mere statement of the respondent that he had informed his servants not to sell liquor unless they furnished meals. It is evident that the respondent knew that his servants were simply furnishing sandwiches in place of meals to those who ordered liquor, which was a mere subterfuge, and done for the purpose of evading the law. In Hall v. McKechnie, 22 Barb. 247, the defendants were in-

dicted for selling strong and spirituous liquors or wines in quantities less than five gallons, without a license. It was proved that the defendants were proprietors of a store, doing business together; and in the store daily sales of small measures of spirituous liquors were made there by a clerk of the defendants, some of which occurred when the defendants were in the store. This proof warranted the conclusion that the sales were by their authority. Sales by their clerk, acting under their directions, were made by them, and they thereby incurred the penalty in like manner as if they had personally sold. It was held in Cheese Co. v. Murtaugh, 50 N. Y. 316, that the principal cannot exonerate himself from liability for the acts of his agent by showing that they were committed in violation of his instructions, or relieve himself of the consequence resulting from actual notice or knowledge of the facts communicated to his agent by showing utter ignorance on his part. The liability is as absolute as if the acts had been committed by the principal in person, or the knowledge of the particular facts had been communicated to him. In the case last cited the court says the act which gives the penalty sued for only subjects him who shall knowingly sell, supply, or bring to be manufactured to any cheese factory diluted, adulterated, or skimmed milk. It is not the act of selling, supplying, or bringing to the factory the milk condemned by law that gives the penalty. If so, it would be immaterial whether the owner and proprietor sold or brought the milk in person, or by his servants, or by the agency of third persons. The act might be regarded as the act of the principal, and he made liable, although taken without his personal knowledge or intervention. Davis v. Bemis, 40 N. Y. 453; Perry v. Edwards, 44 N. Y. 223. In Re Michell, 41 App. Div. 272, 58 N. Y. Supp. 632, Willard Bartlett, J., in the opinion of the court states that the acts of the respondent's brother, who managed his hotel in his absence, must be deemed the acts of the respondent. The certificate was taken away by a corporation which held an assignment of the instrument from the respondent. The fact that this was done in his absence, or without the consent of his agent, does not affect his liability. In re Lyman, 40 App. Div. 46, 57 N. Y. Supp. 634. The proof in this case warrants the conclusion that the sales of liquor made by the servants of the respondent in violation of the statute were made with his knowledge and consent, and under his directions.

The motion, therefore, to revoke and cancel the license, must be granted.