LYMAN v. ERIE COUNTY ATHLETIC CLUB.

(Supreme Court, Appellate Division, Fourth Department. December 29, 1899.)

1. INTOXICATING LIQUORS—REVOCATION OF LICENSE—JURY TRIAL.
    The holder of a liquor license is not entitled to a trial of the issues by
jury, on the ground that a license is property of which he cannot be law-
fully deprived by summary proceedings, in proceedings under Laws 1896,
c. 112, § 28, providing for the revoking or canceling of a license, where it
is shown that the statements made in the application therefor were false,
or that the holder was not entitled to receive, or is not entitled to hold,
the same on account of violations of the provisions of the law; such a
license being qualified property, held subject to all the restrictions placed
upon it by the act under which it is issued.

Appeal from special term, Erie county.

Application of Henry H. Lyman, commissioner, for an order re-
voking and canceling a liquor-tax certificate issued to Erie County
Athletic Club. From an order denying respondent's motion for a
trial of the issues by jury, respondent appeals. Affirmed.

Appeal from an order made at the Erie special term on the 6th day of Sep-
tember, 1899, upon the return of an order to show cause why an order should
not be made in this proceeding revoking and canceling said liquor-tax certificate
on the ground that the said defendant, Erie County Athletic Club, holder of
said certificate, has been guilty of a violation of the liquor-tax law, and for
that reason has no right to hold said certificate. The petition of the respondent
was presented and filed with the court, and the Athletic Club filed an answer
controverting most of the facts set forth in the petition upon which the order to
show cause was granted. The Athletic Club moved "that the issues herein be
sent to a jury for trial." In the order appealed from is the following lan-
guage. "Ordered, that the said motion for a new trial of the issues herein by a
jury be, and the same hereby is, denied." The order also named a referee to
take the proofs of the parties in relation to the allegations of the petition herein,
and to report the evidence to a special term.

Argued before HARDIN, P. J., and ADAMS, McLENNAN,
SPRING, and SMITH, JJ.

Shire & Jellinek, for appellant.
Mead & Stranahan, for respondent.

HARDIN, P. J. Henry H. Lyman, the state commissioner of ex-
cise, in a petition verified on the 26th day of August, 1899, states that
on the 28th day of April, 1899, the Erie County Athletic Club, by
its vice president, made a statement and application in writing for
a liquor-tax certificate, authorizing and permitting it to traffic in
liquors, under subdivision 1 of section 11 of the liquor-tax law, at the
premises known as "No. 359 Washington Street," in the city of Buf-

falo; and that that petition was, on the 1st day of May, presented to Daniel O'Grady, the special deputy commissioner of excise for the county of Erie, together with a bond; and that upon receiving and filing said statement and bond, and upon receipt of the tax, the special deputy commissioner issued to the Erie County Athletic Club liquor-tax certificate No. 12,300, permitting it to traffic in liquors, under subdivision 1 of section 11 of the liquor-tax law, at the premises mentioned.    The petition avers that the club has been trafficking in liquors under said certificate since the issuing thereof.    The petitioner further alleges that in the statement so filed, in answer to question No. 13, "May the applicant lawfully carry on such traffic in liquors on such premises?" and to question No. 14, "Was such traffic in liquors actually lawfully carried on in such premises on March 23, 1896?" the applicant answered, "Yes."    It is averred that the said statements were material statements, and were and are false. It is also averred that the Erie County Athletic Club was not a corporation or association organized in good faith, under the laws of the state of New York, as provided for the organization of societies and clubs for social, recreative, and similar purposes, and that said club was not lawfully organized, and did not, on the 23d day of March, 1896, traffic in or distribute liquors among its members, and was therefore not entitled to receive, and is not entitled to hold, said certificate.    The petition further avers that the club "was organized and is carried on for the purpose of evading the provisions of the liquor-tax law, and for selling liquor to any person or persons, regardless of membership in said club, and is what is commonly known as a 'fake club.'"    The petition further alleges that the club, "since the issuing of said certificate as aforesaid, has trafficked in liquors with persons other than members of said club, and for that reason is not entitled to hold said certificate."    The petition avers that on the 28th day of July, 1899, and on the 29th of July, 1899, the club, by its officers, sold to two persons named, on each date, two glasses of liquor, to wit, two glasses of beer, to be drunk on said premises, which were then and there drunk on said premises by the persons named.    In the prayer contained in the petition the commissioner asks for an order requiring the club to show cause before the court "why said liquor-tax certificate should not be revoked and canceled for the reasons hereinbefore set forth, and that upon the return of said order an order be made revoking and canceling said certificate, or for such other or further relief in the premises as may be just." The answer of the Erie County Athletic Club contained denials of the material allegations stated in the petition.

To support the appellant's contention that it was entitled to a trial by jury, it asserts that a liquor-tax certificate is property of which it cannot be lawfully deprived in a summary proceeding.    In April, 1866, the legislature passed an act to regulate the sale of intoxicating liquors within the metropolitan police district of the city of New York.    That act was considered and construed in Board v. Barrie, 34 N. Y. 657.    That act contained a provision revoking licenses that had been therefore granted under the act of 1857, and in the course of the opinion delivered by Wright, J., he said:

"It, in terms, it is true, revokes licenses granted under the act of 1857, but that is no encroachment upon any right secured to the citizen as inviolable by the fundamental law. These licenses to sell liquors are not contracts between the state and the persons licensed, giving the latter vested rights protected on general principles and by the constitution of the United States against subsequent legislation; nor are they property, in any legal or constitutional sense. They have neither the qualities of a contract or of property, but are merely temporary permits to do what otherwise would be an offense against a general law. They form a portion of the internal police system of the state, are issued in the exercise of its police powers, and are subject to the direction of the state government. which may modify, revoke, or continue them, as it may deem fit. If the act of 1857 had declared that license under it should be irrevocable (which it does not, but, by its very terms, they are revocable), the legislatures of subsequent years would not have been bound by the declaration. The necessary powers of the legislature over all subjects of internal police, being a part of the general grant of legislative power given by the constitution, cannot be sold, given away, or relinquished. * * * But no one legislature can curtail the power of its successors to make such laws as they may deem proper in matters of police."

In People v. Wright, 3 Hun, 306, a question arose under section 4 of chapter 549 of the Laws of 1873, authorizing the board of excise to revoke the license granted to any person if they should become satisfied that he has violated any of the provisions of the act, and in the course of the opinion which I prepared in that case I said:

"The relator was not entitled to a trial by jury. The statute under which he received his license expressly authorizes and empowers the board of excise, when 'they shall become satisfied that any such person or persons has or have violated any of the provisions of the act, to revoke, cancel, and annul the license of such persons.' The license was merely a permit given to the relator, under which he was authorized to sell ale and beer. It did not give him any property or vested right to enjoy the privileges thereof beyond the time when the board should become satisfied that he had violated any of the provisions of the acts of 1857, 1869, 1870, or 1873. The board had no power to inflict a penalty upon him for violation of the law. They were simply authorized to revoke the permit theretofore given him in respect to ale or beer. * * * The board, in issuing licenses and in revoking them, are clothed with power to be exercised in their discretion."

The latter case was approved in the opinion of Van Brunt, P. J., in People v. Meakim, 56 Hun, 631, 10 N. Y. Supp. 163. In that case an application was made for a mandamus to compel the excise commissioners of the city of New York to decide a proceeding before them instituted to procure a revocation of a license to sell liquor, and in the course of the opinion it was said:

"In our judgment, it was the plain intent of the legislature, as expressed in this act, that after hearing all the testimony the board,. as a board, should consider such testimony, and thereupon decide by a vote of the commissioners whether the accused person has or has not violated any of the provisions of the act. If such accused person has so violated any of the provisions of the act, the duty to revoke the license is imperative. In that case, to quote the language of the act, 'they shall revoke, cancel, and annul the license.' And this duty cannot be evaded, or the rights of the people trifled with, by nonaction or silence."

In People v. Board of Com'rs of Police & Excise, 59 N. Y. 92, the court of appeals held that:

"The provisions of the excise law of 1873 (section 8, c. 549, Laws 1873), providing for the cancellation, by boards of excise, of licenses granted for the sale of intoxicating liquors, is not in contravention of the constitutional provision

preserving the right of trial by jury. Const. art. 1. The power to license and to cancel licenses is vested in the legislature, and the mode and manner in which it shall be done rests in the legislative discretion."

Near the close of the opinion in that case, Grover, J., said:

"The counsel further insists that section 8 is unconstitutional, for the reason that it authorizes the conviction of a party of a crime without a trial by jury. But it authorizes nothing more than an inquiry into and determination of the question whether the party licensed continues to be a suitable and proper person to sell intoxicating liquors, the statute itself determining that a violator of the excise laws, while holding a license, is not such a person. That the power to license the sale of intoxicating liquors and to cancel such license when granted is vested in the legislature has been determined by this court. Board v. Barrie, 34 N. Y. 657. The mode and manner in which this shall be done rests in the discretion of that body."

In People v. Murray, 149 N. Y. 367, 44 N. E. 146, 32 L. R. A. 344, chapter 112, Laws 1896, known as the "Liquor Tax Law," was held not to be a tax law in the proper sense; "but it is a law enacted under the police power, the exactions of which, although denominated 'taxes,' are imposed for the primary purpose of regulating and controlling the liquor traffic." Andrews, C. J., in speaking of the character of the act of 1896, said:

"It is radically different in some respects from the excise laws which it supersedes. But the changes are in the administration of the excise system, and not in its essential character. * * * The payment of the tax and the giving of the bond are conditions precedent to the right to engage in the business, and the impositions and conditions precedent is the distinguishing test of a license law."

In Re Livingston, 24 App. Div. 51, 48 N. Y. Supp. 989, a proceeding was instituted to revoke a license certificate, and the evidence showed that beyond a question one of the statements in the application was untrue, and the license was revoked; and, in affirming the order unanimously, the court, in speaking by Williams, J., said:

"It is said, however, that, before the applicant could be deprived of his certificate, he was entitled to have a trial by jury, under the constitution; that the certificate was property, and he could not be deprived of such property without due process of law. We have held that these certificates are property. People v. Durante, 19 App. Div. 292, 45 N. Y. Supp. 1073. They were made such by virtue of the provisions of the liquor tax law, but the legislature, which gave the certificate the character of property, had power to and did, by the same act, provide both for their issuance and cancellation, and under what circumstances they should be valid, and when and how they might be revoked. The character given them as property was subject to all these provisions attached to them when they were created. Applicants take them with all the privileges and subject to all the burdens imposed upon them by the liquor-tax law."

Our attention is called to Colon v. Lisk, 153 N. Y. 188, 47 N. E. 302, and we see nothing in the learned opinion of Martin, J., delivered in that case, which aids the contention of the appellant here. The act there condemned involved the unauthorized confiscation of private property (oysters) for the mere protection of private rights, and is not within the police power of the state. That learned judge, in speaking of the police power, said:

"Under that power, persons and property may be subjected to necessary restraints and burdens to secure the general public good. That that power exists

is, undenied. That it is necessary to the proper maintenance of the government of the state and the general welfare of the community must also be admitted. Although it includes everything essential to the safety, health, morals, and general good of the public, it is by no means unlimited."

The conclusion was reached in that case that the act of the legis-. lature there condemned was not to be "upheld upon the ground that it is within the police power of the state"; and it was added: "It is to be observed that the statute does not relate to the health, morals, safety, or welfare of the public, but only to the private interests of a particular class of individuals."

We see nothing in that case inconsistent with, or out of harmony with, the doctrine laid down in Beer Co. v. Massachusetts, 97 U. S. 25, 24 L. Ed. 989. In the latter case it was held:

"All rights are held subject to the police power of the state; and, if the public safety or the public morals require the discontinuance of any manufacture or traffic, the legislature may provide for its discontinuance, notwithstanding individuals or corporations may thereby suffer inconvenience. As the police power of the state extends to the protection of the lives, health, and property of her citizens, the maintenance of good order, and the preservation of the public morals, the legislature cannot, by any contract, devest itself of the power to provide for these objects."

See, also, Stone v. Mississippi, 101 U. S. 814, 25 L. Ed. 1079.

Power to revoke certificates granted under the liquor-tax law is conferred upon special terms of the supreme court or a justice of that court, and it is made the duty of such justice or of the court to act, and to revoke and cancel certificates, where the holder has failed to comply, by truthful statements in his application or otherwise, with the provisions of the law. Evidently the legislature intended .the action to be summary, and was designed to furnish a ready and quick remedy for failure to comply with the provisions of the law.

Section 28 provides, in subdivision 2, that at any time after the liquor-tax certificate. has been granted any citizen of the state may present a verified petition to a justice of the supreme court, or a special term of the supreme court of the judicial district in which such traffic in liquors is authorized to be carried on, asking "for an order revoking and canceling such certificate upon the ground that material statements in the application of the holder of such certificate were false, or that he was not entitled to receive or is not entitled, on account of the violation of any provisions of this law, conviction for which would cause a forfeiture of such certificate, or for any other reason, to hold, such certificate." The section also provides that such petition shall state the facts upon which such allegations are based, and thereupon an order shall be granted requiring the holder of such certificate to appear before the special term on a day specified. The section further provides that on the day specified the justice, or court before whom the same is returnable, shall "hear the proofs of the parties, and may, if deemed necessary or proper, take testimony in relation to the allegations of the petition, or appoint a referee to take proofs in relation thereto, and report the evidence to such justice or court." The practice adopted in this case is in accordance with the provisions of that section.

That section further provides that, "if the justice or court is satisfied that material statements in the application of the holder of such certificate were false, or that the holder of such certificate was not entitled to receive, or is not entitled to hold such certificate, an order shall be granted revoking and canceling such certificate." It becomes the imperative duty of the justice or court to whom the application is made to comply with the terms of the statute. Proceedings have been instituted in various parts of the state under the section which we have just referred to, and courts have sustained them. In re Bradley, 22 Misc. Rep. 301, 49 N. Y. Supp. 1100; In re Livingston, 24 App. Div. 51, 48 N. Y. Supp. 989; In re Lyman, 25 Misc. Rep. 638, 56 N. Y. Supp. 359; Id., 26 Misc. Rep. 300, 56 N. Y. Supp. 1020; In re Bridge, 36 App. Div. 533, 55 N. Y. Supp. 54, affirming 25 Misc. Rep. 213, 55 N. Y. Supp. 54; In re Place, 27 App. Div. 561, 50 N. Y. Supp. 640; In re Lyman, 29 App. Div. 391, 49 N. Y. Supp. 559, and 52 N. Y. Supp. 1145; Id., 28 Misc. Rep. 385, 59 N. Y. Supp. 971; Id., 28 Misc. Rep. 278, 59 N. Y. Supp. 828; In re Kinzel, 28 Misc. Rep. 622, 59 N. Y. Supp. 682. This court has, by its action in numerous cases, been committed to the validity of proceedings taken under section 28 of the act, and it seems orderly that it should adhere until the contrary doctrine shall be held by the court of last resort.

Our attention has been called to a dictum in Re Lyman, 160 N. Y. 96, 54 N. E. 577, and also to an opinion delivered in response to a motion for a reargument of that case, in which opinion it was said:

"We ought to regard the question as still open for further discussion whenever it arises in an actual controversy presented, so that in a case involving the same question coming here we will not regard ourselves concluded by what has been stated in the opinion. It will then be open to the counsel for the commissioner to make such arguments on that point as he may be advised."

Under the circumstances of the case, we deem it orderly to follow. the views which we have heretofore expressed, and to sustain the proceeding now brought before us.

Judgment affirmed, with costs. All concur.