[Criminal No. 814. Filed October 8, 1934.]

[36 Pac. (2d) 260.]

J. H. BARRETT, Appellant, v. STATE, Appellee.

Messrs. Cusick & Lyons, for Appellant.

Mr. Thos. J. Elliott, for the State.

LOCKWOOD, J.—J. H. Barrett, hereinafter called defendant, was convicted of selling beer in violation of Ordinance 714 of the City of Tucson, and has appealed. The case is before us on an agreed statement of facts, the material portions of which read as follows:

"That at all times mentioned therein the defendant J. H. Barrett, was operating a restaurant as an employee of R. C. Howell, who was the owner of a lease on said premises at 41 South Stone Avenue, Tucson, Arizona, as aforesaid, and at all times the said R. C. Howell did have issued to him a restaurant license to sell liquors for consumption on the premises from the Arizona Tax Commission under Chapter 76, 1933, Session Laws of the State of Arizona. That at said time the said R. C. Howell also had issued to him a license from the City of Tucson to operate a restau-

rant and to sell therein all forms of spirituous liquors for consumption on the premises under Ordinance Number 714. That before the issuance of said licenses or either of them, he had fully complied with all the requirements of the laws of the State of Arizona, and the ordinances and regulations of the City of Tucson pertaining to restaurant owners.

"That on or about the 9th day of March, as aforesaid, the said Keefe and Knowles entered said premises, as aforesaid, at or about the hour of 6:32 P. M., and seated themselves in said restaurant known as the New Deal Cafe. That there was upon a table in said booth in which they were sitting a dish in which pretzels were usually kept, and a few pieces of which were left. That the said Keefe and Knowles ordered a glass of beer for each, which was served to them by the defendant. That the said defendant at the time he served the parties with the beer said, 'You do not want anything to eat, do you?' and that the said Keefe and Knowles, or either of them, replied, 'No,' and no food of any kind was served with said beer."

Ordinance 714, which defendant was accused of violating, reads so far as material, as follows:

"Section 7. It shall be lawful for any licensee holding a restaurant license to sell or serve spirituous liquors to patrons of such restaurant to be served and consumed only with meals furnished in good faith to such patrons."

"Section 1. The word 'meal' means the consumption of food of a nature and quantity sufficient for the maintenance of the consumer."

There are four assignments of error, which we consider in their inverse order. The fourth is that since the subject of the sale of intoxicating liquors is a state-wide concern, and the legislature has covered it fully by chapter 76, Session Laws of 1933, the city of Tucson is without authority to legislate thereon. In support of this contention, *Clayton* v. *State,* 38 Ariz. 135, 297 Pac. 1037, and Id., 38 Ariz.

466, 300 Pac. 1010, are cited. The rule laid down in that case may be summarized as follows:

" . . . Where the subject is one of local interest or concern, or where though not of local concern the charter or legislation confers on the city express power to legislate thereon, both jurisdictions may legislate on the same subject. Where, however, the subject is of state-wide concern, and the Legislature has appropriated the field and declared the rule, its declaration is binding throughout the state."

On a careful examination and comparison of Ordinance 714, *supra,* and chapter 76, *supra,* it is evident that the real purpose of the chapter is to secure revenue for the state of Arizona by requiring a license for engaging in the business of selling intoxicating liquor, and the purpose of the ordinance is to secure revenue for the city of Tucson from the same source and in the same manner. The various regulatory provisions of both enactments are very similar, and with few exceptions were obviously included only for the purpose of assisting in enforcing the revenue features. It is plain that the securing of revenue for a city is peculiarly and emphatically a matter of local concern, and unless the manner in which this is done is not authorized by its charter, or is in conflict with the general law, the mere fact that the state may seek revenue from the same source and in the same manner does not make the common source of revenue so purely a subject of state-wide concern that the city cannot also secure funds therefrom. The charter of Tucson expressly grants that city the right to secure revenue by a license tax on any kind of business whatsoever, and to provide for the manner of enforcing its payment. We see nothing in the ordinance which violates the rule laid down in the Clayton case.

The point raised by the other assignments of error is that the ordinance is so vague and uncertain in its terms that it cannot be determined what acts violate it. It is urged that the phrases "consumed only with meals furnished in good faith to such patrons" and "food of a nature and quantity sufficient for the maintenance of the customer" are so indefinite and uncertain that the licensee cannot determine therefrom under just what circumstances he can safely serve liquor to his patrons. A very similar question has arisen several times in the state of New York. The statute there limited sales of liquor by hotels to those who ordered and obtained "meals in good faith." In the case of *In re Kinzel*, 28 Misc. 622, 59 N. Y. Supp. 682, 684, the court said:

" . . . The requirements of this provision of the statute are very broad and sweeping, and are not in the least ambiguous. The hotel keeper's license gives him certain privileges on the Sabbath, which must be exercised in conformity to the law. It will be seen from the language of the act that persons who resort to an inn on Sunday for the purpose of procuring and drinking liquor are not guests, within the meaning of the statute, and the fact that the hotel keeper or his servants furnish sandwiches with the liquor does not make such persons guests. To put a sandwich beside a glass of beer when a sandwich is not ordered, and to take it away again without having received any pay therefor, is not serving a meal, in good faith, with the drink. If a person, on the Sabbath, goes to a hotel, and calls for liquor, and the proprietor or his servant informs him that he cannot be served with liquor unless they furnish him a meal, and a sandwich is brought, and placed before him, and they call it a meal, it is hardly necessary to say that this is not serving a meal, in good faith, with the drink, as required by section 31 of said act. Such a meal does not make him a 'guest,' in the common acceptation of the word. No such device or subterfuge can defeat the policy of the law.

This mode of trafficking in liquor by hotel keepers on the Sabbath is contrary to the express provision of the statute. The proprietors of hotels, therefore, who permit liquors to be sold in the manner indicated, run the risk of having their liquor tax license revoked. A guest, within the meaning of the statute, is a person who in good faith occupies a room in a hotel as a temporary home, and pays the regular and customary charges for such occupancy, but who does not occupy such room for the purpose of having liquor served therein; or, second, a person who, during the hours when meals are regularly served therein, resorts to a hotel for the purpose of obtaining, and actually orders and obtains at such time, in good faith, a meal therein. If a person occupies a room in a hotel in good faith for rest or lodging, or actually orders and obtains a meal, he would be a guest, and to such person the hotel keeper may sell intoxicating liquor under his license. But one who takes a room for a brief period, for the sole purpose of procuring and drinking liquor, is not a guest, within the meaning of the statute; and, if the proprietor knowingly permits him to occupy and use the room for such a purpose, he violates the law. One who goes to a hotel on the Sabbath, and orders a meal, not in good faith, not because he is hungry, or wants anything to eat, but for the sole purpose of procuring and drinking intoxicating liquor to gratify a craving appetite, is not a guest, within the meaning of the statute, because he does not order the meal in good faith; and, if the proprietor of the hotel knows that the sole and only object in ordering the meal is to obtain intoxicating liquor, then he has no right to furnish it. If a traveler, who is tired and hungry, should stop at a hotel on the Sabbath, and at the usual hour for dinner should go into the dining room, and the only food placed before him was a cheese sandwich, could it be said that the sandwich constituted an ordinary meal? Assume that the guest refused to pay for the meal, and the landlord sued him; would any court hold that the sandwich was a meal? I think not. When a person goes to a hotel that is conducted on the American plan, and orders a

meal, he is usually supplied with a variety of food,—
as bread, butter, meat, vegetables, and tea or coffee.''

We think the test laid down therein as to what a
''meal'' is, is in effect the same as that set forth in
the ordinance, to wit, such a quantity and quality
of food as would ordinarily be ordered and consumed
by the customer under the circumstances, were the
question of liquor not involved. The seller is not
bound by the ordinance to determine, at his peril, the
proper amount or kind of food to be ordered by the
customer. The choice is left to the latter. But he
must, upon a *bona fide* order, be supplied by the
seller with such food as would justify the reasonable
man in believing that it was primarily food for his
maintenance, and not merely liquor for his pleasure,
the customer was seeking. As in innumerable other
criminal cases, the question of whether the licensee
acted in good faith, or in other words as a reasonable
man, is for the triers of fact under the evidence in
the particular case. The burden imposed on the
licensee by the ordinance is not greater or more in-
definite than that imposed by law on all citizens in
many instances, viz., to act as a reasonable man
would, in good faith, act under the circumstances.
The ordinance was not so uncertain as to be invalid.

The stipulation of facts shows clearly and beyond
doubt a violation of the ordinance.

The judgment is affirmed.

ROSS, C. J., and McALISTER, J., concur.