560 P.2d 423

Ronald E. GLENN, Appellant,

v.

IMPERIAL TRUST, an Arizona Corporation, Appellee.

No. 12639.

Supreme Court of Arizona, In Banc.

Feb. 4, 1977.

Richmond, Ajamie, Fay & Warner by Bruce F. Demaree, Phoenix, for appellant.

Robert C. Forquer, Phoenix, for appellee.

HOLOHAN, Justice.

This is an appeal from the trial court's entry of judgment n. o. v. for defendant-appellee. This court has assumed jurisdiction pursuant to 17A A.R.S. Supreme Court Rules, rule 47(e)(5).

In June, 1971, Dr. Ronald E. Glenn, plaintiff (appellant) became a full-time employee of defendant (appellee), Imperial Trust, an

Arizona corporation. This working relationship continued until plaintiff resigned from the defendant corporation on June 30, 1972. On October 29, 1973, plaintiff filed a complaint seeking unpaid back wages from the defendant for the time period of June 1971 through December 31, 1971. The complaint claimed that plaintiff was entitled to earned but unpaid wages of $9,050.05. The defendant denied all of plaintiff's claims and counterclaimed on an unpaid $1,000 promissory note entered into between the plaintiff and defendant. Following a jury trial, plaintiff was granted a verdict and judgment for $6,854.98, which included a setoff for defendant's counterclaim on the promissory note. The defendant moved for a new trial and the trial court granted the new trial and a *sua sponte* judgment n. o. v. on October 10, 1974. The written judgment n. o. v. and order for a new trial was entered on December 9, 1974. Plaintiff had filed a notice of appeal and bond for costs on appeal on December 6, 1974, three days prior to the entry of the written judgment. Plaintiff then filed only an amended notice of appeal after the written judgment on December 11, 1974.

The issues raised on appeal are as follows:

1. Do the Arizona appellate courts have jurisdiction when an appellant files the bond for costs on appeal *prior* to the entry of judgment and the notice of appeal *after the entry of judgment?*

2. Did the trial court abuse its discretion in granting defendant a new trial and a *sua sponte* judgment n. o. v.?

The jurisdictional issue is one of first impression with this court. The procedural requirements for seeking appellate review of a civil action are set forth in 16 A.R.S. Rules of Civil Procedure, rules 73 through 76. In order to perfect an appeal both a notice of appeal and a bond for costs on appeal must be "filed with the superior court within 60 days from the entry of the judgment or order appealed from, unless a different time period is provided by law." 16 A.R.S. Rules of Civil Procedure, rule 73(b)(1).

■■ This court has previously held that both the timely filing of a notice of appeal and a cost bond are jurisdictional requisites to appeal. *Marquez v. Rapid Harvest Co.,* 89 Ariz. 62, 358 P.2d 168 (1960). Whereas, the premature filing of a notice of appeal will not work to perfect an appeal, *Consolidated Stage Co. v. Corporation Commission,* 66 Ariz. 75, 182 P.2d 937 (1947), the question of whether the premature filing of a cost bond to perfect an appeal is one of first impression. Although the filing of the cost bond and the notice of appeal are parallel requirements, *Marquez v. Rapid Harvest Co., supra,* we do not believe that the premature filing of the cost bond should nullify the appeal.

The type of bond for costs on appeal is set forth in 16 A.R.S. Rules of Civil Procedure, rule 73(h). There is no requirement that such bond must specify the orders appealed from or that reference to the notice of appeal be set forth. Those matters are specifically reserved for the notice of appeal. 16 A.R.S. Rules of Civil Procedure, rule 73(e). The bond here in question is conditioned as follows:

". . . that the said Principal will pay costs if the appeal is dismissed or the judgment affirmed, or of such costs as the Appellate Court may award if the judgment is modified against the said Principal in said appeal during its pendency or at the final determination thereof, and judgment for said costs may be entered against us, and each of us, up to the full penalty of this bond, in the final judgment of this appeal."

We are of the opinion that the bond for costs on appeal in this case, although filed prematurely, does meet the procedural requirements set forth in 16 A.R.S. Rules of Civil Procedure, rule 73. Although the bond filed in this appeal sufficiently protects the appellee, Imperial Trust, from paying the costs of an unsuccessful appeal we must note, however, that our decision in this case is limited to the particular cost bond used in this instance and is not intended to give blanket approval to all cost bonds so filed. *See In re Sims' Estate,* 39

Wash.2d 288, 235 P.2d 204 (1951). It is obvious that the better and accepted procedure is to file *both* the bond for costs on appeal and the notice of appeal together after the entry of judgment appealed from but within the 60-day time limit. The appeal is properly before us.

■ There is a serious question whether the trial court has the power to enter a judgment n. o. v. *sua sponte. Johnson v. New York, N.H. & H.R. Co.,* 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77 (1952). We need not decide that issue because we believe that the trial court's entry of such judgment was error in this case. A trial court's entry of judgment n. o. v. will not be sustained on appeal if it appears that the evidence presented at the trial, when viewed in the light most favorable to the party against whom the judgment was entered, could have allowed reasonable men to reach differing conclusions. *Bond v. Cartwright Little League, Inc.,* 112 Ariz. 9, 536 P.2d 697 (1975); *Adroit Supply Co. v. Electric Mutual Liability Insurance Co.,* 112 Ariz. 385, 542 P.2d 810 (1975). We believe that reasonable men could have differed in their views of the evidence presented at trial.

Plaintiff introduced several corporate resolutions setting forth his employment relationship with the defendant. Plaintiff was initially appointed a Senior Vice President by a resolution of March 27, 1971, and was named Executive Vice President on September 24, 1971. In a resolution of June 3, 1971, titled "Salary Scale and Executive Secretary Pay," the salary for the Senior Vice President was set at $23,000 per year and for the Executive Vice President at $29,000 per year. The June 3rd resolution was established as an "interim salary schedule subject to review by the Board of Directors at a later date when further research and study can be accomplished" and also stated the salaries set forth therein were "to be paid in cash or in stock at officers option to expire December 31, 1971." A resolution of August 28, 1971, set plaintiff's "present cash payroll" at $1,000 per month effective September 1, 1971. When plaintiff was named Executive Vice President on September 24, 1971, the salary was given as that outlined for said office in the June 3rd resolution.

On January 24, 1972, the salaries for officers and the method for compensation were changed. In a resolution of that date plaintiff's salary as Executive Vice President was reduced to $20,000 per year. Furthermore, the balance between plaintiff's monthly cash payroll and the total gross yearly salary was thereafter to be paid in Imperial Trust stock valued at $1.00 par value and that the salary schedules were subject to review for possible year-end bonus additions.

In a three-page letter dated June 30, 1972, plaintiff submitted his resignation from Imperial Trust to become effective on July 15, 1972. In this letter plaintiff outlined the conditions of his employment for the years 1971 and 1972 and also set forth the reasons for his resignation. Plaintiff therein requested that defendant remit to him the following:

"1. 1203 shares of Imperial for May, June and 1/2 July.

"2. 1 week vacation pay accrued $250.00 plus 120 shares of stock.

"3. $8,396.64 representing unpaid salary for 1971."

The letter stated that the unpaid 1971 salary was based upon the schedule set forth in the June 3, 1971 resolution.

After discussions between plaintiff and the defendant's President, plaintiff was given a $2,000 bonus and a check for $1,000. In return for the $1,000, plaintiff signed a promissory note payable to the defendant at the end of one year. Following these negotiations plaintiff signed a second two-paragraph letter of resignation dated and made effective June 30, 1972, wherein he stated:

"I was employed at a salary of $20,000 per year. I was receiving, in cash, $14,-040.00 per year, leaving a balance of $5,960.00 per year which was to be given to me in Imperial Trust stock. I have been paid in full, in cash salary and stock, April 30, 1972. From May 1, 1972 through July 7, 1972, $5,960.00, which is

to be paid in stock, is broken down to $496.66 per month for a total of $1,109.00. In addition to the above, I am to receive one week's vacation pay in the amount of $270.00 gross. *This will pay me in full.*" (Emphasis supplied.)

The defendant argues that the plaintiff's salary in 1971 was nothing more than $1,000 cash per month and that the salary schedule set by the corporate resolution of June 3, 1971 was intended to be a hypothetical goal. The defense also asserts that the option of paying said salaries in stock or cash was exercisable only by the Board of Directors and not by the individual company officers. Plaintiff, however, argues that the difference between his cash salary and the salary set forth in the salary schedule of June 3, 1971, was payable to him in stock form at the end of 1971. In support of his claim plaintiff asserts that Imperial Trust had passed a resolution giving each officer warrants for Imperial Trust stock equal to five times the difference between their cash salaries and the salaries set out on June 3, 1971. Plaintiff further supported this claim by introducing an Imperial Trust ledger page showing that plaintiff had been issued warrants on April 24, 1972, equal to exactly five times the plaintiff's claim for unpaid 1971 wages.

Alternatively, defendant argues that even if plaintiff had a claim for unpaid wages for the year 1971, that language contained in the second letter of resignation is an acknowledgment, by the plaintiff, that all wages due him from Imperial Trust for both the years 1971 and 1972 had been paid in full. Plaintiff contends that the second letter of resignation merely acknowledged full payment of his 1972 wages only.

In light of the evidence and testimony introduced at trial we do not believe that it was proper for the trial court to enter judgment n. o. v. in this case, either by motion or *sua sponte.* There was no showing that, as a matter of law, all the elements essential for a valid contract of accord and satisfaction were present in this case. Rather, plaintiff's second letter of resignation merely constituted a memo of the negotiations which had taken place between plaintiff and defendant's President. *Vance v. Hammer,* 105 Ariz. 317, 464 P.2d 340 (1970).

We now consider the trial court's action in granting defendant a new trial. It is apparent that the basis for the trial judge's ruling on the judgment n. o. v. was a legal interpretation that the second letter of resignation was a contract of accord and satisfaction. This same legal conclusion seems also to have been the basis for the trial judge's grant of a new trial. The reasons given by the trial court for granting the motion for a new trial were as follows:

"1. The verdict and Judgment are not justified by the evidence and are *contrary to law.*

"2. The Court should have granted Defendant's motion for a directed verdict at the close of Plaintiff's case and at the conclusion of the trial." (Emphasis supplied.)

Absent the erroneous legal conclusion we do not believe that the trial judge's order granting a new trial was warranted. The verdict rendered by the jury was adequately supported by the evidence and testimony entered at trial.

Order granting judgment n. o. v. and new trial is vacated and the trial court is directed to reinstate the judgment on the verdict.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and GORDON, JJ., concur.