578 P.2d 985

**FLAGSTAFF VENDING COMPANY, an Arizona Business Corporation, Appellant,**

v.

**CITY OF FLAGSTAFF, a Municipal Corporation, the Council of the City of Flagstaff, said Municipal Corporation's Governing Body, the Clerk of the City of Flagstaff, Frank Abeyta, Individually, and as the Finance Director of the City of Flagstaff, Charles K. McClain, Individually, and as City Manager of the City of Flagstaff, P. G. Bassler, Individually, and as Sales Tax Administrator and the Treasurer of the City of Flagstaff, Appellees.**

No. 13569.

Supreme Court of Arizona, In Banc.

April 25, 1978.

Shimmel, Hill, Bishop & Gruender, P. C. by Lawrence J. Lee, Phoenix, for appellant.

Mangum, Wall, Stoops & Warden by Robert W. Warden, Fred W. Croxen, II, Flagstaff City Atty., Flagstaff, for appellees.

GORDON, Justice:

Following an audit of appellant's records, the City of Flagstaff, appellee, assessed the Flagstaff Vending Company $7,677.15. This amount reflected a one per cent business privilege tax plus accrued interest and a ten per cent penalty. Appellant paid the taxes under protest and then filed a complaint in the superior court seeking a refund. Following cross motions for summary judgment, the superior court found in favor of the City of Flagstaff. This finding was appealed and we have taken jurisdiction pursuant to 17A A.R.S. Rules of the Supreme Court, Rule 47(e).

Three issues have been raised:

(1) May the City of Flagstaff validly include sales consummated on the Northern Arizona University Campus within appellant's privilege tax basis?

(2) Does the application and enforcement of this tax amount to a denial of equal protection of the law and a denial of due process of law?

(3) Was there an adequate showing of negligence or intentional disregard of the ordinances by appellant to support the assessment of a penalty?

## ON CAMPUS SALES

Appellant's vending machines are located throughout Flagstaff including the campus of Northern Arizona University. Since the sales from all the machines were included in appellant's tax base by the city, appellant has challenged Flagstaff's power to tax transactions occurring on the university campus.

The taxes at issue were assessed pursuant to Flagstaff City Ordinances Nos. 644 and 937. Ordinance Number 937 replaced Ordinance Number 644 on November 5, 1974. The two ordinances do not vary materially and will be considered together in this opinion. Both impose a privilege tax, which is "measured by the volume or amount of business transacted by persons on account of their business activities". Ord. No. 644, § 9; Ord. No. 937, § 9. The tax is levied "at an amount equal to one percent of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within this City in the business of selling any tangible personal property whatever at retail". Ord. No. 644, § 11; Ord. No. 937, § 11.

■ It is settled law that a city may validly impose a tax on the privilege of engaging in a business as measured by the business' gross sales, even though a portion of the sales occur beyond the municipality's corporate limit. *City of Phoenix v. Arizona Sash, Door & Glass Co.,* 80 Ariz. 100, 293 P.2d 438 (1956). By the terms of its ordinances, however, Flagstaff has specifically excluded sales consummated beyond the corporate limits from the tax basis of any retailer. *City of Phoenix v. Borden Company,* 84 Ariz. 250, 326 P.2d 841 (1958); *See also, City of Phoenix v. Phoenix Newspapers, Inc.,* 100 Ariz. 189, 412 P.2d 693 (1966); Ordinance No. 644, § 11, § 18(A)(8); Ordinance No. 937, § 11(A)(13). Having relied on this exclusion appellant asserts that its sales on the university campus fall within the terms of the ordinances' exclusions.

■ An examination of Flagstaff Ordinance No. 436, which describes the corporate limits, demonstrates that the exterior boundary of Flagstaff completely surrounds Northern Arizona University. This geographical fact satisfies the "within" requirement of the ordinances. This conclusion comports with the ordinary meaning of "within"—"on the innerside * * * inside the bounds of a region". Webster's Third New International Dictionary, 2627 (1965). We therefore reject appellant's theory of Northern Arizona University being a geographical entity not "within" the City of Flagstaff, as defined by the terms of the privilege tax ordinances.

Even though the terms of the ordinances include the on-campus sales within appellant's privilege tax basis, appellant contends the City of Flagstaff was without power to do so. Appellant relies on two theories, which could prevent Flagstaff from reaching the on-campus sales: (1) That a municipality may not impose a tax on the State of Arizona, and (2) That the field of taxation on state university land has been preempted by the state.

■ We agree that a municipality may not impose a tax on the State of Arizona or its subdivisions such as the Board of Regents. *City of Tempe v. Arizona Board of Regents,* 11 Ariz.App. 24, 461 P.2d 503 (1969). In order to determine whether the Flagstaff tax violates this prohibition, it becomes necessary to ascertain where the legal incidence of the tax falls. By comparing the language of the Flagstaff ordinances with the tax statute considered by Justice Struckmeyer in *Arizona State Tax Commission v. Garrett Corporation,* 79 Ariz. 389, 291 P.2d 208 (1955), it becomes clear that the legal incidence of the tax falls on the Flagstaff Vending Company. Since the legal incidence of the privilege tax does not fall on the State or the Board of Regents, the tax is not objectionable on the grounds that it either interferes with the functions of the State or imposes a tax on the State. *City of Tempe v. Del E. Webb Corporation,* 13 Ariz.App. 597, 480 P.2d 18 (1971).

Appellant's third argument attempts to draw an analogy between the tax *sub judice* and the privilege tax considered in *Warren Trading Post Company v. Moore*, 95 Ariz. 110, 387 P.2d 809 (1963), *rev'd. sub nom., Warren Trading Post Company v. Arizona State Tax Commission*, 380 U.S. 685, 85 S.Ct. 1242, 14 L.Ed.2d 165 (1965). In that case the United States Supreme Court struck down Arizona's privilege tax on traders selling to Indians residing on the Navajo Indian Reservation, because of the comprehensive scheme of Federal regulations which had the effect of preempting the area of sales on the Indian Reservation. *Warren Trading Post Company v. Arizona State Tax Commission, supra.* The *Warren* opinions are not here controlling because the doctrine of federal preemption is based on a conflict between sovereigns, whereas here we are concerned with the conflicting powers of the state and one of its subdivisions,[1] which derives its powers from the laws of the state.

■ In Arizona:

"Both a city and a state may legislate on the same subject when that subject is of local concern or when, though the subject is not a local concern, the charter or particular state legislation confers on the city express power to legislate thereon; but where the subject is of statewide concern, and the legislature has appropriated the field by enacting a statute pertaining thereto, that statute governs throughout the state, and local ordinances contrary thereto are invalid". *Phoenix Respirator & Ambulance Service, Inc. v. McWilliams*, 12 Ariz.App. 186, 188, 468 P.2d 951, 953 (1970); *Clayton v. State*, 38 Ariz. 135, 297 P. 1037, *rehearing denied*, 38 Ariz. 466, 300 P. 1010 (1931). We have previously held the securing of revenue by a city to be of a peculiarly local nature, and that both a city and the state may tax the same source. *Barrett v. State*, 44 Ariz. 270, 36 P.2d 260 (1934). Although the Legislature could exempt all on-campus retail sales from the reach of a surrounding

municipality's privilege tax, it has not done so. " * * * [T]he mere fact that the state may seek revenue from the same source and in the same manner [as the city] does not make the common source of revenue so purely a subject of statewide concern that the city cannot also secure funds therefrom". *Barrett v. State*, 44 Ariz. at 273, 36 P.2d at 261; *See also City of Phoenix v. Arizona Sash, Door & Glass Co., supra.*

■ Despite the variety of objections which appellant has raised, we have concluded that the City of Flagstaff may validly include retail sales on the Northern Arizona University Campus within appellant's privilege tax basis. The campus is located "within" the City of Flagstaff for purposes of the tax. Since the legal incidence of the tax does not fall on the state, and the Legislature has not acted to "preempt" this means of raising revenue, the transaction privilege tax remains a valid exercise of the City of Flagstaff's taxing power.

### EQUAL PROTECTION AND DUE PROCESS

■ Appellant also asserts that its constitutional right to equal protection of the law was violated by the City of Flagstaff taxing its operations, but not imposing a tax on others similarly situated. By attacking the taxing ordinance as being violative of the Fourteenth Amendment, appellant carries the burden of overcoming the presumption that the classifications rest upon some reasonable basis and are not purely arbitrary. *Uhlman v. Wren*, 97 Ariz. 366, 401 P.2d 113 (1965). *See also Wittenberg v. Mutton*, 203 Or. 438, 280 P.2d 359 (1955).

■ Appellant's theory rests on the fact that a limited number of exemptions to the tax exist. The sales which are excluded from the basis of the privilege tax include: the sale of books and supplies in the University bookstore; amusements, pool games and other recreational devices operated by bona fide religious, educational or nonprofit

---

1. We do not take any position on the effect of a city-county, or city-city conflict of powers which could arise given a similar geographical situation as the one *sub judice.*

**560**

organizations; and the sale of food on a "room and board" dormitory contract. However, normal cafeteria food sales are taxed. These limited classifications of exempted sales do not violate the equal protection clause of the Fourteenth Amendment if any state of facts can reasonably be conceived which would sustain the classifications. *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959); *Carmichael v. Southern Coal & Coke Co.*, 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937).

In determining whether the taxing ordinance violates the Fourteenth Amendment, we are guided by the early case of *Southwestern Oil Company v. State of Texas*, 217 U.S. 114, 30 S.Ct. 496, 54 L.Ed. 688 (1910). There the State of Texas imposed an occupation tax on the wholesale sellers of coal oil, naphtha, benzine or any other mineral oil but did not tax wholesale dealers of other articles. The Supreme Court noted

"It is not questioned that the state may classify occupations for purposes of taxation. In its discretion it may tax all, or it may tax one or some, taking care to accord to all in the same class equality of rights. * * * It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries, and the property of charitable institutions".

\* \* \* \* \* \*

"In our judgment, the objection that, within the true meaning of the 14th Amendment, the statute of Texas has the effect to deny to the Oil Company the equal protection of the laws, does not rest upon any solid basis. The statute makes no distinction among such wholesale dealers as handle *the particular articles specified in § 9.* The state had the right to classify such dealers separately from those who sold, by wholesale, other articles than those mentioned in that section. The statute puts the constituents *of each of those separate classes* on the same plane of equality. It is not arbitrary legislation, except in the sense that all legislation is arbitrary. * * * What

were the special reasons or motives inducing the state to adopt the classification * * * we do not certainly know. Nor is it important that we should certainly know. * * * But we will not speculate as to the motives of the state, and will assume—the statute, neither upon its face nor by its necessary operation, not suggesting a contrary assumption—that the state has in good faith sought, by its legislation, to protect or promote the interests of its people". 217 U.S. at 121–126, 30 S.Ct. at 498–500.

 While we do not know the precise motives of the Flagstaff City Council, it is a simple matter to conceive a rational basis for the above exemptions. The sale of books and supplies at the University bookstore may encourage citizens to pursue education. Also, a government may validly "foster what it conceives to be a beneficent enterprise", or charitable institutions. *Carmichael v. Southern Coal & Coke Co.*, 301 U.S. at 512, 57 S.Ct. at 874. Food which is included in a "room and board contract" cannot be taxed, for the incidence of such a tax would fall on the University or Board of Regents. *City of Tempe v. Arizona Board of Regents*, 11 Ariz.App. 24, 461 P.2d 503 (1969). Since a rational basis for these exemptions exist, the ordinance does not violate appellant's constitutional right to equal protection of the law.

 Appellant also assails the tax as being violative of due process because the vending machines located on the university campus allegedly derive no benefit from the City of Flagstaff. This argument is without merit. The tax raises revenues for reducing the city's bonded indebtedness, and its property tax and for the Public Works Reserve Fund. Since the on-campus machines receive fire protection from the city, and appellant's off campus business enjoys police and fire protection, as well as benefiting from the maintained roadways, it is of no moment that some of appellant's machines do not receive particular benefits.

"A tax is not an assessment of benefits. It is, as we have said, a means of distributing the burden of the cost of govern-

ment. The only benefit to which the taxpayer is constitutionally entitled is that derived from his enjoyment of the privileges of living in an organized society, established and safeguarded by the devotion of taxes to public purposes. * * This court has repudiated the suggestion, whenever made, that the Constitution requires the benefits derived from the expenditure of public monies to be apportioned to the burdens of the taxpayer, or that he can resist the payment of the tax because it is not expended for the purposes which are peculiarly beneficial to him." *Carmichael v. Southern Coal & Coke Co.,* 301 U.S. at 522–523, 57 S.Ct. 878–879.

Since appellant's business enjoys the general benefit of operating within the City of Flagstaff, and its on-campus machines derive some specific protection of the city's services, the tax does not violate the due process requirement of the Fourteenth Amendment. As we have found the imposition of the tax on appellant does not run afoul of the Constitution, there only remains a final issue to be considered.

## PENALTY ISSUE

In addition to the taxes which we have considered, the City of Flagstaff assessed appellant a ten percent penalty, as provided by the tax ordinances. Based on the following facts, we have concluded that we are without jurisdiction to consider the validity of the penalty.

The trial court originally entered summary judgment on January 27, 1977. However, this judgment did not address the penalty issue and was entered prior to the time permitted for objections. Appellant pointed out these deficiencies, and also objected to the noncompliance of the judgment with Rule 54(b), Rules of Civil Procedure, 16 A.R.S. Together with these objections appellant submitted a revised form of judgment which included the critical words "there being no just reason for delay within the meaning of Rule 54(b), Arizona Rules of Civil Procedure". The original judgment was vacated.

Then, on February 4, 1977 the court signed the revised judgment, and directed the parties to submit memoranda on the penalty issue. Appellant proceeded to appeal this judgment by filing the required bond and notice of appeal on February 18, 1977. Judgment on the penalty issue was not entered until August 1, 1977. Since neither party ever filed a notice to appeal the judgment on the penalty issue, we are without jurisdiction to consider this question. *Glenn v. Imperial Trust,* 114 Ariz. 239, 560 P.2d 423 (1977); *See also Rexing v. Rexing,* 11 Ariz.App. 285, 464 P.2d 356 (1970).

The City of Flagstaff's privilege tax has withstood appellant's arguments. Sales made on the campus of Northern Arizona University were validly included in appellant's privilege tax basis because (1) the legal incidence of the tax fell on appellant, not the state; and (2) there was no "preemption" of the tax source by the state. The tax also withstood appellant's constitutional challenge since we were able to discern rational bases for the limited exclusions which it granted, and appellant was not being deprived of all benefits which flowed from its tax obligations. Finally, we were unable to consider the penalty issue because it was never properly appealed.

Judgment of the superior court affirmed.

HAYS and HOLOHAN, JJ., concurring.

Note: Vice Chief Justice FRED C. STRUCKMEYER, Jr., did not participate in the determination of this matter.

CAMERON, Chief Justice, specially concurring.

The record in the instant case does not make it clear whether the campus of Northern Arizona University is part of the City of Flagstaff. Assuming, for the purpose of this concurrence, that the campus is not part of the City of Flagstaff, even though it may be completely surrounded by the corporate limits of the city, I must take exception with the statement of the opinion which reads:

"An examination of Flagstaff Ordinance No. 436, which describes the corporate limits, demonstrates that the exterior boundary of Flagstaff completely surrounds Northern Arizona University. This geographical fact satisfies the 'within' requirement of the ordinances. This conclusion comports with the ordinary meaning of 'within'—'on the innerside * * * inside the bounds of a region'. Webster's Third New International Dictionary, 2627 (1965). We therefore reject appellant's theory of Northern Arizona University being a geographical entity not 'within' the City of Flagstaff, as defined by the terms of the privilege tax ordinances."

I have no problem with the result reached by the majority because I feel Flagstaff's privilege tax ordinance may be logically construed to include within a retailer's tax base all gross sales of the business, including those consummated beyond the corporate limits, *City of Phoenix v. Arizona Sash, Door and Glass Company*, 80 Ariz. 100, 293 P.2d 438 (1956), but for the reason that I believe the statement of the majority opinion concerning "within" is misleading, I must specially concur.