Argued February 2, affirmed February 23, 1955

WITTENBERG ET AL. *v.* MUTTON ET AL.

280 P. 2d 359

Howard K. Zimmerman, Judge.

*Wilber Henderson,* of Portland, argued the cause and filed briefs for appellants.

*Marshall C. Hjelte,* of St. Helens, argued the cause and filed a brief for respondents.

Before Tooze, A.C.J., and Rossman, Lusk, Brand, Latourette and Perry, Justices.

PERRY, J.

The city of St. Helens, pursuant to the authorization of the city charter, which provided as follows:

"Section 54½. To license and tax for regulation and revenue all businesses, professions, trades, including all occupations and businesses conducted by resident and non-resident persons from motor vehicles within said City, also including motor vehicles entering from outside the City Limits of the city of St. Helens, and using the streets of said City; * * *"

passed an ordinance, the portions thereof material to the issue before us being as follows:

"An ordinance providing for licenses upon trades, shops, occupations, professions, businesses and callings for the purpose of revenue and regulation; providing for the method of issuing licenses; providing penalties for violations thereof; and repealing Ordinance No. 1063 and Ordinance No. 1226.

"THE CITY OF ST. HELENS DOES ORDAIN AS FOLLOWS:

"SECTION 1.
"* * * * *

"(b) As used in this ordinance, 'business' means professions, trades, occupations, shops and all and every kind of calling carried on for profit or livelihood.
"* * * * *

"SECTION 2.
"(a) This ordinance is enacted, except as hereinafter otherwise specified, to provide revenue for municipal purposes and to provide revenue to pay for the necessary expenses required to issue the license for and regulate the business licensed.
"* * * * *

"SECTION 4.
"* * * * *

"(c) The Council finds that the following trades, shops, businesses or callings are carried on in the City of St. Helens, Oregon by persons from regular places of business and by persons from vehicles who have no regular places of business in the City; that persons with regular places of business in the City pay city ad valorem taxes upon real and personal property which is used in and belongs to their businesses and that the persons who do not have regular places of business in the City escape such ad valorem taxes. Both receive

the benefit of police and fire protection, public streets and sidewalks, street lights, health services and other public facilities and services of the City. Therefore, in order that each shall pay as nearly as may be not a discriminatory share, but a share in proportion to benefits received of the burden of supporting such facilities and services of the City, the following businesses operating from regular places of business in the City shall pay the flat license fee, and the businesses not operating from regular places of business in the City shall pay fifty (50%) per cent more than the flat license fee specified for each classification:

"* * * * *

"Bakeries ------------------------------$15.00 annually

"* * * * *

"(f) Producers of farm products raised in Oregon, produced by themselves or their immediate families, shall not be subject to license fees prescribed herein that may apply to the selling of such products in the City of St. Helens, Oregon by themselves or their immediate families."

The plaintiffs, having refused to pay the required license fee as set out in the ordinance, and being threatened with arrest, brought this suit to restrain the defendants from proceeding further with their complaint or citation, and to perpetually enjoin the city from seeking to collect the license fee on the ground that the ordinance providing therefor is invalid. A demurrer to the plaintiffs' complaint having been sustained by the trial court, the plaintiffs have appealed.

The plaintiffs' complaint alleges that they are partners engaged in the business of manufacturing cookies and other bakery goods, with their principal place of business in the city of Portland, and for "several years last past have effected periodic deliveries, usually not oftener than once a week, of its products to retail mer-

chants of the City of St. Helens, Oregon, by a one-ton motor truck licensed to and operated by plaintiffs and their agents and employees; that said truck is propelled through the use of motor vehicle fuel, and it is operated over regular routes; that the quantity of products that plaintiffs deliver to the retail merchants as aforesaid is determined by the needs or the requirements of such merchants made known to plaintiffs' drivers or representatives at the time the deliveries are made; that in some instances the retail merchants make periodic payments to plaintiffs at their Portland office, covering the aggregate amount due for deliveries theretofore made over an indefinite period of time; that in other instances drivers of plaintiffs collect from the retail merchants the sales price at the time the deliveries are made; that all motor trucks used and operated by plaintiffs in effecting such deliveries are duly licensed and registered under the laws of the State of Oregon, and all drivers of such trucks are duly licensed and registered drivers under the laws of the State of Oregon, and plaintiffs are licensed by the State of Oregon to operate and sell their products from motor vehicle delivery trucks; that the use of said trucks is essential to, and the trucks are an indispensable part of the operation of plaintiffs in making the deliveries as aforesaid; that plaintiffs in operating said trucks, and in handling the cookies and bakery products sold and distributed by them, have and do comply with all federal and state laws and rules and regulations promulgated in respect thereof, and said plaintiffs are licensed to make distribution by motor vehicle of its products in pursuance of Title 48, Chapter 1, O.C.L.A., as Amended''.

■ The plaintiffs' first assignment of error is that ''The Court erred in sustaining the Demurrer to appellants' Complaint, for the reason that Ordinance No.

1241 of the City of St. Helens, insofar as it imposes a license tax on the operation of motor vehicles for delivery purposes without making provision that such revenue shall be used exclusively for the building and maintaining of roads, is unconstitutional by reason of Section 3, Article IX, of the Constitution of the State of Oregon.''

Section 3, Article IX, of the Constitution of the State of Oregon, insofar as it is material, reads as follows:

> '' * * * the proceeds from any tax or excise levied on the ownership, operation or use of motor vehicles shall, after providing for the cost of administration and any refunds or credits authorized by law, be used exclusively for the construction, * * * maintenance * * * and policing of public highways, roads and streets within the state of Oregon * * * .''

The plaintiffs' contention being that the ordinance places a tax upon the operation and use of a motor vehicle, which right to tax rests exclusively in the state; and further, the revenue derived therefrom is being used to carry on the general expenses of the municipal corporation, not for the ''construction, maintenance or policing'' of the streets as provided by Section 3, Article IX, of the Constitution.

It must be noted that the provisions of the city's charter and of the ordinance speak clearly of licensing and taxing for regulation and revenue, businesses, professions, trades and occupations, not motor vehicles. It seems, therefore, quite clear that the expressed purpose of the charter amendment and the ordinance based thereon was the licensing and taxing of the various businesses, professions and trades carried on within the city and to include therein those who were not

residents, but who came into the city via motor vehicle for the express purpose of conducting their business upon the streets of the city. The purpose of the tax as expressed is for revenue to be derived from the privilege of carrying on certain businesses, and is to cover not only those certain businesses having a fixed location within the city, but also those same businesses having a fixed location beyond the boundaries of the city who carried on their business within the city, not from a permanent location, but from a motor vehicle.

It is evident, therefore, the tax is not upon the ownership, operation or use of the motor vehicle, but an occupation tax based upon the privilege of carrying on a business. Section 3, Article IX, of the Constitution of the state of Oregon applies to the "ownership, operation or use of motor vehicles" as a means of transportation upon and over the highways of the state, and cannot be construed to cover a tax upon a business sought to be carried on from a motor vehicle.

The plaintiffs' second assignment of error is that the "Lower Court erred in sustaining the Demurrer to appellants' Complaint, for the reason that Ordinance No. 1241 of the City of St. Helens is discriminatory and contravenes the provision of Section 20 of Article I of the Constitution of the State of Oregon."

Section 20 of Article I of the Constitution of the state of Oregon reads as follows:

"* * * No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

The plaintiffs say:

"We invoke this section of the Constitution against the discrimination manifest in the Ordi-

nance itself. It is provided by Subsection (f) of Section 4, as follows:

" 'Producers of farm products raised in Oregon, produced by themselves or their immediate families, shall not be subject to license fees prescribed herein that may apply to the selling of such products in the City of St. Helens, Oregon by themselves or their immediate families.'

"This class of persons may use the streets of St. Helens, may be accorded the same police protection, fire protection and use of the other facilities of the city, that are accorded to appellants."

The plaintiffs' contention of unjust discrimination is answered fully, and adversely, in the case of *Garbade and Boynton v. City of Portland,* 188 Or 158, 214 P2d 1000, where on page 191 of our decision we quoted, with approval, *Carmichael v. Southern Coal Co.,* 301 US 495, 81 L ed 1245, 57 S Ct 868, as follows:

" ' * * * It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation. [Citing cases.] This Court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation. [Citing many cases.]

" 'Like considerations govern exemptions from the operation of a tax imposed on the members of a class. A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it. [Citing cases.]

" 'This restriction upon the judicial function, in passing on the constitutionality of statutes, is not artificial or irrational. A state legislature, in the enactment of laws, has the widest possible latitude

within the limits of the Constitution. In the nature of the case it cannot record a complete catalogue of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function.' ''

and on page 192 we stated:

''The uniformity exacted in the imposition of an excise tax is geographical, not intrinsic. Under the equal protection clauses of the state and federal constitutions the state is not confined 'to a formula of rigid uniformity in framing measures of taxation.' It 'may tax some kinds of property at one rate, and others at another, and exempt others altogether', and it 'may lay an excise on the operations of a particular kind of business, and exempt some other kind of business closely akin thereto'. Steward Machine Co. v. Davis, supra (301 U.S., at pp. 583, 584), and the cases therein cited. The above enunciated rules are applicable to municipalities.

''All presumptions and intendments are in favor of the constitutionality and validity of these ordinances. The City Council did not 'record a complete catalogue of the considerations which' moved 'its members to enact' these ordinances, and, as said in Carmichael v. Southern Coal Co., supra: 'In the absence of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action.' ''

■ The question of classification is purely legislative, and only when the courts can say there is no

reasonable justification for the discrimination made will they interfere. *Safeway Stores v. Portland,* 149 Or 581, 42 P2d 162.

10. The city of St. Helens did not set forth its reasons for taxing the bakery business and exempting "the producers of farm products", but it may be reasonably assumed that the discrimination was intended to encourage the flow of fresh farm products to its citizens. But whatever the reasoning of the enacting body of the city of St. Helens, the election of a legislative body to tax one type of business occupation and exempt another not of the same class is not such discrimination as will render the ordinance in question invalid as being prohibited by the equal protection clause of the Constitutions, either Federal or State. See *American Sugar Refining Co. v. Louisiana,* 179 US 89, 45 L ed 102, 21 S Ct 43; *Bell's Gap R'd Co. v. Pennsylvania,* 134 US 232, 33 L ed 892, 10 S Ct 533.

■ The plaintiffs make some contention that they were not engaged in conducting a business in the city of St. Helens. The ordinance in question does not attempt to define "conducting a business"; therefore, that question, necessarily, devolves upon the court. There is no satisfactory general definition of the term and most courts have declined to lay down any fast and all embracing rule, 23 Am Jur 335, Foreign Corporations, § 361; and it is said that the term "doing business" has a different meaning when considering the right to tax or license than when considering the jurisdictional processes of courts. *Pergl v. U.S. Axle Co.,* 320 Ill App 115, 50 NE 2d 115. However, where there is a continuous course of business in the solicitation of orders that are filled, all carrying out a general scheme for the production of profit to a company as distinct from a single transaction, the courts generally reach

the conclusion that such activities constitute "doing business". *West Publishing Co. v. Superior Court,* 20 Cal2d 720, 128 P2d 777; *Crosswell & Co. Inc., v. Town of Bishopville,* 172 SC 26, 172 SE 698.

As stated by the plaintiffs in their complaint, "plaintiffs for several years last past have effected periodic deliveries, usually not oftener than once a week, of its products to retail merchants of the City of St. Helens, Oregon, * * * over regular routes; that the quantity of products that plaintiffs deliver to the retail merchants as aforesaid is determined by the needs or the requirements of such merchants made known to plaintiffs' drivers or representatives at the time the deliveries are made; that in some instances the retail merchants make periodic payments to plaintiffs at their Portland office, covering the aggregate amount due for deliveries theretofore made over an indefinite period of time; that in other instances drivers of plaintiffs collect from the retail merchants the sales price at the time the deliveries are made; * * *."

From the above statement of the plaintiffs' we can reach but one conclusion, and that is, that the plaintiffs were doing business in the city of St. Helens.

The decree of the trial court sustaining the defendants' demurrer to plaintiffs' complaint is affirmed.