# CITY OF PORTLAND,
## a municipal corporation,
### *Respondent,*

*v.*

## Vernon COOK,
### *Appellant.*

## (97C-913270; CA A105244)

12 P3d 70

Donato B. Masaoy III argued the cause and filed the briefs for appellant.

Linda S. Law, Deputy City Attorney, argued the cause and filed the brief for respondent.

Per C. Olson argued the cause for *amicus curiae* Multnomah Bar Association. With him on the brief were Judy Danelle Snyder and Hoevet, Snyder & Boise.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

Armstrong, J., concurring.

**KISTLER, J.**

The City of Portland brought this action to recover unpaid business license fees from defendant. Defendant filed a counterclaim seeking a declaration that imposing the business license fee on him violates the state and federal constitutions. On cross-motions for summary judgment, the trial court granted the city's motion and denied defendant's. The court entered judgment accordingly but did not include a declaration addressing defendant's counterclaim in its judgment. We affirm the trial court's ruling on the merits but vacate its judgment so that it may enter a declaration consistent with this opinion.

The City of Portland prohibits persons from doing business within the city unless they have a business license and have paid a license fee. Portland City Code (PCC) § 7.02.300(A).[1] " 'Doing [b]usiness' means to engage in any activity in pursuit of profit or gain, including but not limited to * * * [the] rendering of services[.]" PCC § 7.02.100(B). The annual fee for a business license is the greater of $100 or 2.2 percent of the adjusted net income that the licensee derives from business within the City. PCC § 7.02.540(A); PCC § 7.02.500; PCC § 7.02.100(B).[2] If a licensee's income derives partially from activities within the city, the fee is imposed on only that portion of the licensee's income. PCC § 7.02.610.[3]

Defendant is an attorney whose office is located outside the City of Portland. Between 1992 and 1996, he

---

[1] Although the code uses the terms "license" and "license fee," PCC § 7.02.010 makes clear that a "license" does not mean a permit and that the "fees prescribed herein are for revenue purposes, and are not regulatory permit fees."

[2] The code contains a number of exemptions. Among other things, if a person's "gross receipts from all business, both within and without the City, amounts to less than $25,000 in any tax year," that person does not have to pay a license fee. PCC § 7.02.400(C).

[3] The code provides the following formula to determine the portion of the licensee's income that is subject to the fee: It directs the licensee to "multipl[y] the total net income from the applicant's business by a fraction, the numerator of which is the total gross income from business activity in the City during the tax year, and the denominator of which is the total gross income of the licensee from business activity everywhere during the tax year." PCC § 7.02.610(B). The code also provides for alternative methods of apportionment if the method described above violates the licensee's rights under the state or federal constitution. PCC § 7.02.610(E).

appeared at various local, state, and federal hearings within the city. He also took depositions and other steps within the city to prepare for his cases. During those tax years, defendant's unadjusted net annual income varied from a low of $91,528 to a high of $125,904. Defendant's activities within Portland account for at least five percent of his income during those years.

In 1997, plaintiff initiated this action to recover unpaid business license fees from 1992 through 1996, along with penalties and interest. Defendant filed an answer denying that he did business within Portland and a counterclaim for a declaratory judgment. On cross-motions for summary judgment, the trial court found that defendant did a substantial amount of legal work in Portland that amounted to "a continuous course of business in the solicitation and carrying out of services." Relying on *Wittenberg et al v. Mutton et al*, 203 Or 438, 448, 280 P2d 359 (1955) (city may tax bakery located outside the city limits to the extent it sells its products inside the city), the trial court granted the city's motion for summary judgment and denied defendant's. The court also reasoned that defendant was not entitled to a declaration of the parties' respective rights and duties and, thus, denied his request for a declaratory judgment. The court entered judgment accordingly.

Defendant raises essentially four arguments on appeal. First, he argues that, to the extent he was acting as an officer of the court within the city, he was either not engaging in business or was exempt from the business license fee. Second, he argues that a business license fee is a poll or head tax that violates Article IX, section 1a, of the Oregon Constitution. Third, he argues that the business license fee violates the Due Process Clause. Finally, he argues that the trial court erred in not including a declaration resolving his counterclaim in the judgment.

■ The first issue defendant raises is narrow. Defendant does not dispute that Portland has the authority to tax attorneys. *See Abraham v. City of Roseburg*, 55 Or 359, 362, 105 P 401 (1909); *Lent v. Portland*, 42 Or 488, 493, 71 P 645 (1903). Nor does he appear to dispute, for the purposes of this argument, that, if a member of another profession had engaged in

commercial activities within the city to the same extent he did, that person would have engaged in business within the city. Rather, defendant argues that his "appearances in courts or in collateral proceedings thereto are as an officer of the court" and that, when he acts as an officer of the court, he is a "public officer." It follows, he reasons, that any fees that he receives in his capacity as a public officer may not be taxed by the city. To hold otherwise, he concludes, would violate the state separation of powers doctrine.[4]

■    The conclusion defendant reaches is at odds with the premise he accepts—that cities have authority to tax revenue generated by attorneys. To be sure, the cases recognizing that authority did not specifically consider a separation of powers argument. *See Abraham*, 55 Or at 362; *Lent*, 42 Or at 493. They were concerned with the city's authority to tax a profession. But defendant provides no persuasive reason why attorneys should enjoy a special exemption from a tax that applies uniformly to all persons doing business within the City of Portland. Attorneys may be acting as officers of the court when they earn revenue, but any effect on the judicial branch that results from a general tax on their income is far too tangential to rise to the level of a separation of powers issue. *See State ex rel Huddleston v. Sawyer*, 324 Or 597, 617, 932 P2d 1145, *cert den* 522 US 994 (1997) (separation of powers may be violated when "one branch of government has unduly burdened the actions of another").[5]

■    *Amicus* Multnomah County Bar Association raises a related but separate issue. It argues that "[f]or the phrase

---

[1] Defendant cites a number of state constitutional provisions but does not explain their relevance. He does, however, cite *Monaghan v. School District No. 1*, 211 Or 360, 315 P2d 797 (1957), a separation of powers case. We understand the thrust of his argument to be that it would violate the separation of powers doctrine if the city could impose a tax on an officer of the court in the pursuit of his or her judicial duties. To the extent defendant intends to raise but fails to develop other constitutional arguments, we decline to reach them. *See State v. McNeely*, 330 Or 457, 468, 8 P3d 212 (2000).

[5] To the extent defendant argues that attorneys are, by definition, public officers whose income is exempt from tax, other courts have not accepted that definitional argument. *See Franklin v. Peterson*, 87 Cal App 2d 727, 197 P2d 788 (1948). As the court explained in *Franklin*, "[a]ttorneys are not public officers, but are engaged in a private profession pursued primarily for pecuniary profit." *Id*. at 736. We concur in that reasoning.

'doing business' to have any rational application to the practice of law, it must refer only to the location of a lawyer's principal place of business." The Portland City Council, however, has specifically defined what the phrase "doing business" means. It "means to engage in any activity in pursuit of profit or gain, including * * * [the] rendering of services[.]" PCC § 7.02.100(B). That definition can rationally be applied to defendant's activities with the City of Portland even if his principal place of business is elsewhere. *Amicus*'s argument appears to reflect older notions that a municipality or state is limited to taxing a person's principal place of business. *See, e.g., Franklin v. Peterson*, 87 Cal App 2d 727, 734, 197 P2d 788 (1948) (interpreting business license ordinance to limit it to principal place of business); *Hubband v. Evans*, 114 NJL 586, 177 A 871 (1935) (the situs of a business is the proper place for levying a business license tax). Oregon, however, has not adopted that limited view of a municipality's taxing authority. *See Wittenburg*, 203 Or at 448; *cf. Alaska Airlines, Inc. v. Dept. of Rev.*, 307 Or 406, 413, 769 P2d 193 (1989), *cert den* 493 US 1019 (1990) (due process permits the use of in-flight time over Oregon in determining the portion of a non-domiciliary airline's taxable Oregon income).

■    Defendant advances a second argument. He argues that Portland's business license fee violates Article IX, section 1a, of the Oregon Constitution, because it is a poll or head tax.[6] A poll or head tax is a fixed tax assessed on each eligible person. *See Oregon City v. Moore*, 30 Or 215, 217, 46 P 1017 (1896) (describing "a poll tax of $2 upon each and every person liable therefor"); *Salem v. Marion County*, 25 Or 449, 451-52, 36 P 163 (1894) (same). Article IX, section 1a, which prohibits those taxes, was added to the constitution in 1910. The amendment's supporters explained that a poll or head tax "is unjust not only because it is collected from very few of the men who are supposed to pay, but also because it bears so unequally on men in proportion to their ability to pay." Voters' Pamphlet, General Election, November 8, 1910, at 24-25.[7] The problem that the measure's supporters perceived was that poll or head taxes are not graduated. As they

---

[6] Article IX, section 1a, provides: "No poll or head tax shall be levied or collected in Oregon."

[7] In *Douglas Electric v. Central Lincoln PUD*, 164 Or App 251, 260, 991 P2d 1060 (1999), we noted that the legislative history of a measure enacted by the voters includes the ballot title and other materials contained in the voters' pamphlet.

explained, "[t]he laborer supporting a family on $2 a day pays exactly the same poll tax as the corporation manager with a salary of ten thousand dollars a year." *Id.*

■■     Portland's business license fee is not a head or poll tax. It is not assessed per capita. Rather, it is assessed only on those persons or corporations who choose to do business within the city. Moreover, although there is a minimum tax, the tax is proportional. The amount of the tax is generally a function of the income a licensee earns. The tax does not possess the same characteristics that prompted the people to add Article IX, section 1a, to the Oregon Constitution.[8]

■     Defendant argues next that Portland's business license fee violates the Due Process Clause.[9] The Court has repeatedly considered the limits due process places on a state's ability to "tax a proportionate share of the income of a non-domiciliary corporation that carries out a particular business both inside and outside that State." *See, e.g., Hunt-Wesson, Inc. v. Franchise Tax Bd. of Cal.*, 528 US 458, 460, 120 S Ct 1022, 145 L Ed 2d 974 (2000); *Container Corp. v. Franchise Tax Bd.*, 463 US 159, 103 S Ct 2933, 77 L Ed 2d 545 (1983); *Mobil Oil Corp. v. Commissioner of Taxes*, 445 US 425, 436-37, 100 S Ct 1223, 63 L Ed 2d 510 (1980).[10] As the Court explained in *Mobil Oil*:

---

In that case, we looked to the arguments in favor of a measure to determine its meaning. *Id.*

[8] As part of his fifth assignment of error, defendant argues that "the minimum fees are unlawful takings in violation of defendant's due process rights under the [Fifth] and [Fourteenth] Amendments to the U.S. Constitution and deny defendant equal protection of the laws, thereby violating Article I[,] [s]ection 20 of the Oregon Constitution and the [Fifth] and [Fourteenth] Amendments to the U.S. Constitution." Defendant did not raise a takings or an equal protection claim below. We will not consider either claim for the first time on appeal. *See* ORAP 5.45(2); *State v. Moore*, 163 Or App 392, 396, 989 P2d 1058 (1999).

[9] Although defendant's argument is not completely clear, he appears to bring an as-applied rather than a facial challenge to Portland's business license fee; he raises the constitutional issue as a defense to applying the license fee to him.

[10] These cases address a jurisdiction's ability to impose a unitary business tax on a multi-jurisdictional business. Portland does not impose a unitary business tax but instead apportions income earned inside the city using a less complex geographical formula. *See Container Corp.*, 463 US at 164-65 (distinguishing unitary business taxes from taxes that apportion income based on geographical or transactional accounting). Although the federal cases address far more difficult apportionment questions than Portland's business license fee presents, the due process test they articulate applies equally here.

"For a State to tax income generated in interstate commerce, the Due Process Clause of the Fourteenth Amendment imposes two requirements: a 'minimal connection' between the interstate activities and the taxing State, and a rational relationship between the income attributed to the State and the interstate values of the enterprise." 445 US at 436-37.

Portland's code meets both parts of that test. A minimal connection is established "if the corporation avails itself of the 'substantial privilege of carrying on business' within the [taxing jurisdiction]." *Id.* at 437 (quoting *Wisconsin v. J. C. Penney Co.*, 311 US 435, 444-45, 61 S Ct 246, 85 L Ed 267 (1940)). On that point, defendant does not dispute that he has repeatedly gone into Portland to practice his profession. He argues, however, that he has not *voluntarily* availed himself of that privilege because his profession requires him to appear in court and at other forums within the city. The fact, however, that defendant has had to go into Portland to pursue his chosen profession does not mean that he has not voluntarily availed himself of the privilege of carrying on business within the city limits.

■ The second part of the due process test is also satisfied. Under the Court's analysis, the question of apportionment focuses on whether a taxing jurisdiction has sought to tax income that is reasonably related to the taxpayer's activities within the jurisdiction. *Mobil Oil*, 445 US at 439. The tax is not properly apportioned if, to paraphrase *Mobil Oil*, the income that is subject to the tax "was earned in the course of activities unrelated to [the business that defendant conducted within the city]." *Id.*; *see also Hunt-Wesson*, 120 S Ct at 1028 (due process violation where limit on deduction resulted in taxing income from a nonunitary business). As noted above, Portland employs a geographical method of apportioning income. *See* notes 3 and 10 above. That method is a reasonable way of apportioning the income that Portland may tax; it reasonably limits the amount of taxable income to the income that defendant earns within Portland's city limits. *See Moorman Mfg. Co. v. Bair*, 437 US 267, 272-73, 98 S Ct 2340, 57 L Ed 2d 197 (1978). As applied to defendant's

income for the tax years 1992 to 1996, Portland's business license fee does not violate due process.[11]

■     Defendant argues finally that the trial court should have included a declaration in the judgment that resolved his declaratory judgment counterclaim. Defendant is correct. Because there was a justiciable controversy, the trial court should have disposed of his declaratory judgment counter-claim "by a judgment containing a declaration as to the matter in dispute." *Advance Resorts of America, Inc. v. City of Wheeler*, 141 Or App 166, 180, 917 P2d 61, *rev den* 324 Or 322 (1996). Although we agree with the trial court that the city may constitutionally require defendant to pay a business license fee for the tax years 1992 to 1996, we must vacate its judgment and remand for the entry of a judgment containing a declaration consistent with this opinion. *See id.*

Judgment dismissing claim for declaratory relief vacated and remanded with instructions to enter a judgment declaring the parties' rights; otherwise affirmed.

**ARMSTRONG, J.,** concurring.

I agree with the majority's analysis and result, with one caveat. The majority implicitly assumes that the federal Due Process Clause imposes a limit on the authority of municipalities to tax people or entities whose contacts with the municipalities do not meet the "minimum contact" standard of the Due Process Clause. I do not question that the Due Process Clause prevents a state and its municipalities from imposing burdens or consequences on people or entities

---

[11] We note one other issue. The record, viewed in the light most favorable to defendant, discloses that defendant's adjusted net annual income attributable to activities within the city (the income that is subject to the business license fee) is greater than $100 but less than $4,550 (the amount of income necessary to produce a license fee greater than $100). Imposing a minimum $100 license fee on income within that range effectively imposes a variable tax rate on businesses depending on where within the range a business's income falls. The effective tax rate increases as the business's income approaches $100; conversely, the effective tax rate decreases as the business's income approaches $4,550. Imposing such a variable tax rate does not present a due process problem; it may result in a higher tax rate for lesser amounts of income, but it does not purport to tax income attributable to business activities outside the jurisdiction. *See Hunt-Wesson*, 120 S Ct at 1028; *Mobil Oil*, 445 US at 439. To the extent that other constitutional challenges might be brought against such a tax, defendant has not raised them, and we express no opinion on the likelihood, if any, of their success.

who have not had the requisite level of contact with the state, but I am less certain that it operates to limit the authority of a municipality to do that to people who have had sufficient contact with the state but not with the municipality. The parties have not raised that issue, however, so we are not required to address it in this case.